Rockingham, }
June, 1899. }

## CRIPPEN & a. v. LAIGHTON.

Where a statute provides that, if an execution against a corporation be returned unsatisfied, the judgment creditor may recover of an individual shareholder thereof an amount equal to the par value of his stock, the liability thus imposed is statutory and not contractual; and a cause of action arising under such statute is local and not transitory.

A cause of action unknown to the common law and created solely by the statute of another state will not be enforced in this jurisdiction when it appears that such method of procedure would be in contravention of New Hampshire law, and that the court of this state would be incapable of doing complete justice to those affected by its decrees.

BILL IN EQUITY, alleging that on June 10, 1890, the plaintiffs recovered judgment in the district court of the county of Dickinson, in the state of Kansas, against the Corn State Bank, a corporation established January 31, 1887, by the laws of Kansas, for $865.70, debt, and costs taxed at $215.85; that execution issued on the judgment and was returned unsatisfied; that the

defendant subscribed for and "actually" took five shares of the capital stock of the bank of the par value of $100 each; that by the law of Kansas the plaintiff may have and recover of the defendant, as an individual shareholder in the bank, the sum of $500, — that is to say, an amount equal to the par value of his stock; and praying that the defendant be ordered to pay that amount to the plaintiffs.

The defendant (now and always heretofore a citizen of this state) in his answer "denies that the plaintiffs have any cause of action in this jurisdiction upon the facts stated, or that they can maintain any bill in equity thereon; and claims the benefit of all exceptions which would be available to him upon demurrer." He also denies all the material allegations of the bill, and alleges that, "if any cause of action ever existed upon the facts in the plaintiffs' bill stated, the same was not brought within the time limited for the enforcement of the plaintiffs' demands against him, and so was barred by the statute of limitations."

The cause was heard on the bill, answer, and proofs. All the allegations of the bill are found to be true. The defendant was a stockholder of the bank when its indebtedness to the plaintiffs occurred, and until after their judgment against the bank was rendered.

December 26, 1889, the Western Trust Company, a corporation established by the laws of Kansas, bought all the assets and assumed all the liabilities of the Corn State Bank, and January 1, 1891, went into the hands of, and was wound up by, a receiver.

The constitution of Kansas contains a clause as follows: "Dues from corporations shall be secured by individual liability of the stockholders to an additional amount equal to the stock owned by such stockholders, and such other means as shall be provided by law; but such individual liability shall not apply to railroad corporations, nor corporations for religious and charitable purposes."

The statutes of Kansas provide that, "if any execution shall have been issued against the property or effects of a corporation, except a railway or a religious or charitable corporation, and there cannot be found any property whereon to levy such execution, then execution may be issued against any of the stockholders, to an extent equal in amount to the amount of stock by him or her owned, together with any amount unpaid thereon; but no execution shall issue against any stockholder, except upon an order of the court in which the action, suit, or other proceeding shall have been brought or instituted, made upon motion in open court, after reasonable notice in writing to the person or persons sought to be charged; and upon such motion such court may order execution to issue accordingly; or the plaintiff in the execution may proceed by action to charge the stockholders with the amount of his judgment." Kan. G. S., 1889, *par.* 1192.

By the Kansas statute of limitations, "an action upon a liability created by statute" must be brought within three years after the cause of action has accrued; but it does not run in favor of a person while he is absent from the state.

All other relevant statutes, practice code provisions, and all pertinent judicial decisions of Kansas, are a part of the case, and, as furnished by counsel, are as follows: "If any corporation, created under this or any general statute of this state, except railway or charitable or religious corporations, be dissolved, leaving debts unpaid, suits may be brought against any person or persons who were stockholders at the time of such dissolution, without joining the corporation in such suit; and, if judgment be rendered and execution satisfied, the defendant or defendants may sue all who were stockholders at the time of dissolution for the recovery of the portion of such debt for which they were liable, and the execution upon the judgment shall direct the collection to be made from property of each stockholder respectively; and if any number of stockholders (defendants in the case) shall not have property enough to satisfy his or their portion of the execution, then the amount of deficiency shall be divided equally among all the remaining stockholders, and collection made accordingly, deducting from the amount a sum in proportion to the amount of stock owned by the plaintiff at the time the company dissolved." Kan. G. S., 1889, *par*. 1204. "If any stockholder pay more than his due proportion of any debt of the corporation, he may compel contribution from the other stockholders by action." *Ib.*, *par*. 1205.

In *Howell* v. *Manglesdorf*, 33 Kan. 193, it was decided that under *par*. 1192 execution could not issue against a stockholder resident in another state upon notice served upon him in his own state,—in other words, a stockholder in another jurisdiction could not be subjected to execution under that section without his voluntary appearance or consent,—and incidentally the court said the liability was in the nature of a guaranty.

In *Abbey* v. *Dry Goods Co.*, 44 Kan. 415, it was held that the liability of stockholders to creditors of the corporation is several and not joint; that an action by a creditor against two or more stockholders cannot be sustained, but each must be sued separately. This doctrine was affirmed in *Howell* v. *Bank*, 52 Kan. 133.

The question whether the defendant's liability under the laws of Kansas can be enforced in this state by bill in equity or other form of procedure is reserved.

*James W. Remick* (*Samuel W. Emery* with him), for the plaintiffs.

I. One who subscribes for stock in a corporation, wherever his own residence may be, offers, by the very act of uniting himself with the corporation, to become liable for the debts of the corporation, in the manner and to the extent provided by the law of its domicile, as fully as if such law were made a part of the contract of subscription. Parties who contract with the corporation contract upon the faith of this liability held out as their security; and the offer of the stockholder, being thereby accepted, ripens into a binding contract, as truly, to all moral and legal intent, as though each stockholder had given to each creditor an express written agreement to the same effect. 2 Mor. Corp., ss. 870–872; Thomp. Corp., s. 3056; 1 Cook Stock. & Stockh., s. 223; *Hicks* v. *Burns,* 38 N. H. 141; *Hancock Nat'l Bank* v. *Ellis,* 172 Mass. 39; *Bell* v. *Farwell,* 176 Ill. 489; *Morris* v. *Glenn,* 87 Ala. 628; *First Nat'l Bank* v. *Gustin Co.,* 42 Minn. 327; *Bagley* v. *Tyler,* 43 Mo. App. 195; *Guerney* v. *Moore,* 131 Mo. 650; *Ferguson* v. *Sherman,* 116 Cal. 169; *Norris* v. *Wrenschall,* 34 Md. 492; *Aultman's Appeal,* 98 Pa. St. 505; *Cushing* v. *Perot,* 175 Pa. St. 66; *Howell* v. *Manglesdorf,* 33 Kan. 193; *Hawthorne* v. *Calef,* 2 Wall. 10; *Carroll* v. *Green,* 92 U. S. 509; *Flash* v. *Conn,* 109 U. S. 371; *Payson* v. *Withers,* 5 Biss. 269; *Morley* v. *Thayer,* 3 Fed. Rep. 737; *Cuykendall* v. *Miles,* 10 Fed. Rep. 342; *Bank of North America* v. *Rindge,* 57 Fed. Rep. 279; *Rhodes* v. *Bank,* 66 Fed. Rep. 512; *McVicker* v. *Jones,* 70 Fed. Rep. 754; *Auer* v. *Lombard,* 72 Fed. Rep. 209; *Nat'l Bank of Oxford* v. *Whitman,* 76 Fed. Rep. 697; *Mortgage Co.* v. *Woodworth,* 79 Fed. Rep. 951; *Hutchins* v. *Lampson,* 82 Fed. Rep. 960; *Whitman* v. *Bank,* 83 Fed. Rep. 288; *Mechanics' Savings Bank* v. *Insurance Co.,* 87 Fed. Rep. 113; *Schiffer* v. *College,* 87 Fed. Rep. 166; *Brunswick Terminal Co.* v. *Bank,* 88 Fed. Rep. 607; *Dexter* v. *Edmands,* 89 Fed. Rep. 467; *Kisseberth* v. *Prescott,* 91 Fed. Rep. 611.

II. Some courts have held that the liability thus created is a primary and original obligation, like that resting upon the members of a partnership, differing only in the fact that the liability is limited in amount and conditioned upon the insolvency of the corporation. *Paine* v. *Stewart,* 33 Conn. 516; *Abbey* v. *Dry Goods Co.,* 44 Kan. 415; *Bagley* v. *Tyler,* 43 Mo. App. 195; *Corning* v. *McCullough,* 1 N. Y. 47; *Moss* v. *Averill,* 10 N. Y. 449; *Flash* v. *Conn,* 109 U. S. 371. Other courts have held that it is in the nature of a guaranty. *Chesley* v. *Pierce,* 32 N. H. 388, 407; *Hicks* v. *Burns,* 38 N. H. 141; *Moss* v. *Mining Co.,* 5 Hill 137; *Patterson* v. *Manufacturing Co.,* 40 Pa. St. 117; *Hanson* v. *Donkersley,* 37 Mich. 184. See, also, 2 Mor. Corp., s. 879; *Thompson* v. *Bank,* 19 Nev. 103,— 3 Am. St. Rep. 797 and note. But, whether regarded as an original promise or as a guaranty, the books and cases are practically unanimous in treating it as a contractual obligation. Authorities, *supra.* Being a contractual obligation,

its extra-territorial enforceability follows upon general principles, and is almost universally recognized.

III.   In the course of the development of the law upon the subject, much argument has been expended to prove. that the liability is in the nature of a penalty, and therefore not entitled to enforcement out of the jurisdiction creating it; but this idea has received no countenance from the courts, is without shadow of warrant in reason, and need not be considered.   Much argument has also been expended to prove that the liability is strictly statutory, without any element of contract, and therefore not entitled to extra-territorial enforcement.   At first this idea found favor with some courts, notably Massachusetts and Illinois, but the trend of authority has been so irresistible toward the more just and reasonable theory of implied contract and transitory liability that Massachusetts and Illinois have been forced to adopt it.   *Hancock Nat'l Bank* v. *Ellis*, 172 Mass. 39; *Bell* v. *Farwell*, 176 Ill. 489.   Rhode Island and New York now stand practically alone in denial of the contractual and transitory character of the liability.   As these states took their stand before Massachusetts and Illinois had changed front, and upon the authority of cases in those states since, in effect, overruled, they are entitled to but little weight, especially as the general views upon which they proceed will not bear analysis.

It has been suggested that *Rice* v. *Hosiery Co.*, 56 N. H. 114, places this jurisdiction alongside of Rhode Island and New York against the contractual idea.   The court in that case used, it is true, the following language :  " The liability is a mere creature of the statute, having none of the elements of a contract, whether express or implied."   But this language was wholly unnecessary to the decision of the case.   That it was used without due consideration, is apparent from the fact that it is based upon *Hicks* v. *Burns*, 38 N. H. 141, which furnishes no warrant for such a proposition, but on the contrary treats the liability. in express terms as an  " implied undertaking " subject to the same rules of enforcement and of the same effect as though embodied in an express contract.   So far as the decision was based upon the form of the proceeding, and the fact that it did not appear that the remedy employed was the remedy provided by the law creating the liability, the decision was, and still is, undoubtedly correct, upon the principle that when a new right, unknown to the common law, is given by a statute, which at the same time provides a remedy, that remedy is exclusive and can alone be pursued.   *Pollard* v. *Bailey*, 20 Wall. 520; *Fourth Nat'l Bank* v. *Francklyn*, 120 U. S. 747, 756; *Morley* v. *Thayer*, 3 Fed. Rep. 737; *Dauchy* v. *Brown*, 24 Vt. 197, 203 ; *Knowlton* v. *Ackley*, 8 Cush. 93; *Cambridge Water-works* v. *Dyeing Co.*, 4 Allen, 239; *Chesley* v. *Smith*, 1 N. H. 20 ; *Stokes* v. *Sanborn*, 45 N. H. 274, 278.

So far as the decision proceeded upon the non-contractual idea, it followed Massachusetts decisions, and, like those decisions, should yield to the flood of light and reason which has since been thrown upon the subject.

IV. It has been suggested that the enforcement of this liability against an individual stockholder in this jurisdiction, compelling him to seek contribution elsewhere, would be subjecting one of our citizens to inconvenience and hardship, and that this it is the duty of the court to prevent by exercising its discretion as to the extent and mode of comity. This proposition was distinctly presented and fully considered in the recent case of *Hancock Nat'l Bank* v. *Ellis, supra*, and the opinion of the court in that case is the best answer to the same contention here. The court said: " We are unable to see in what manner the enforcement of these statutes by the courts of Massachusetts against stockholders resident here, at the instance of a creditor of the corporation, does any injustice to the citizens of Massachusetts. If they pay what they are required to pay, they have the same remedy for contribution which any other stockholders have. This remedy may be difficult to enforce, because the stockholders may reside in many different states or countries; but the same remedy for contribution is given to all stockholders, wherever they reside. The legislature of Kansas has chosen to give to the creditors of certain of its corporations the security which the individual liability of each stockholder affords, to the extent prescribed by its statutes, leaving the burden of enforcing contribution from other stockholders on any stockholder who has been compelled to pay anything in discharge of the debts of the corporation. This somewhat resembles the law of Massachusetts, whereby judgment creditors of cities and towns can levy execution on the property of any inhabitant, and such inhabitant is left to enforce contribution from the other inhabitants. Persons becoming stockholders in foreign corporations can ascertain the nature and extent of the liability of the stockholders in such corporations, according to the laws of the state or country under which the corporations are organized, and they cannot complain if this liability is enforced against them." The same point was urged in the federal court for the district of Massachusetts in the recent case of *Kisseberth* v. *Prescott*, 91 Fed. Rep. 611, with the same result.

It is also suggested that the liability is contrary to the policy of New Hampshire, as indicated by the present statute requiring enforcement of the individual liability of stockholders by bill in equity. This question has been decided adversely to the defendant in several recent cases. We cite three only : *Guerney* v. *Moore, supra ; Bell* v. *Farwell, supra ; Aldrich* v. *Anchor Co.*, 24 Or. 32.

V. The only imaginable ground remaining for refusing jurisdiction is that the liability is against public policy as immoral, or something of that sort. This contention can hardly be made here, because, as was said in *Guerney* v. *Moore, supra,* " the liability is not against public policy. It contravenes no principles of good morals, and has no mischievous tendency. It is not in any sense repugnant to honesty or justice." The best proof of this is the fact that for a long time the liability existed with the approbation of the New Hampshire legislature and courts. *Hicks* v. *Burns,* 38 N. H. 141. If it is right to charge the individual members of unincorporated associations, like partnerships, with the *entire* liability of the firm, it cannot be wrong to charge the individual members of incorporated associations with a *limited* liability.

" The right to maintain a suit of this character, outside of the jurisdiction of the state by which the corporation was chartered, does not depend upon the comity of the state where the suit is brought, or its willingness to recognize and give effect to the laws of a foreign state ; it depends upon the willingness of the courts to enforce a contract validly entered into between the parties in another jurisdiction. A refusal to grant a remedy in a case of this kind would not be a refusal to enforce a foreign law; it would be simply a denial of justice." 2 Mor. Corp., s. 875. It is the undoubted right of the court to regulate, according to its discretion, the extent and mode of comity, but the regulation of comity should not be made a pretext and disguise for repudiation.

VI. It is urged finally that the liability cannot be enforced in this case because it is barred by the statute of limitations of Kansas, which provides that actions upon " a contract not in writing, express or implied," and " upon a liability created by statute other than a forfeit or penalty," shall be barred in three years. This same point has been made in numerous recent cases, under precisely the same circumstances, and overruled in every instance, the courts holding that, as the Kansas statute of limitations is no part of the law of Kansas relating to the liability of stockholders, but a general statute of limitations, it is inoperative outside of that jurisdiction, the question of the statute of limitations being always, under such circumstances, subject to the *lex fori.* *Schiffer* v. *College,* 87 Fed. Rep. 166 ; *Brunswick Terminal Co.* v. *Bank,* 88 Fed. Rep. 607; *Dexter* v. *Edmands,* 89 Fed. Rep. 467 ; *Great Western Telegraph Co.* v. *Burnham,* 162 U. S. 339.

*Frink & Marvin,* for the defendant.

BLODGETT, C. J. The question submitted is whether the plaintiffs' bill (or action at law, if they are permitted to amend) can

be maintained; or, in other words, whether a cause of action unknown to the common law, and which exists only by reason of a local law of the state of Kansas, can, or ought to be, enforced in this jurisdiction.

The several states of the Union do not stand in their relations to each other altogether like foreign countries. They are all subject in many respects to a superior sovereignty, and to numerous laws common to all of them. They are in various ways mutually dependent upon each other. To a large extent their interests are common. Their personal and commercial intercourse is constant and without restriction. Their political and business relations are equally intimate. Many of their relative rights and duties are declared by a " carefully prepared instrument" which controls them all. They are not several or foreign, but United States.

Nevertheless, each state is a sovereign state, except only as it is subject to the federal constitution, under which, for all purposes embraced in it, " the states and the citizens thereof are one, united under the same sovereign authority and governed by the same laws. In all other respects, the states are necessarily foreign to and independent of each other, their constitutions and forms of government being, although republican, altogether different, as are their laws and institutions " (*Bank of Augusta* v. *Earle*, 13 Pet. 519), " and their acts have, consequently, no extra-territorial authority." Sedg. Stat. Law 60; *Blanchard* v. *Russell*, 13 Mass. 1.

Such being the relation and position of the states in regard to each other, a uniformity of state laws is universally recognized as desirable, but has hitherto been found impracticable. There is no reasonable probability of such uniformity in the immediate future through the action of the states. It is in fact apparent that, by reason of their location, the peculiarities of their soil and climate, the character of their people, their business and commercial interests, and a multitude of other conditions and circumstances, a law beneficial in one state might be injurious in another. To make a law of Massachusetts equally valid and enforceable in Oregon might, and probably would, do injustice to the citizens of both states, or to make the laws of both identical.

The federal constitution declares that " full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state. And the congress may, by general laws, prescribe the manner in which such acts, records, and proceedings shall be proved, and the effect thereof." Const. U. S., *art.* 4, *s.* 1. Under this provision, the congress has enacted that " the acts of the legislature of any state or territory, or of any country subject to the jurisdiction of the United States,

shall be authenticated by having the seals of such state, territory, or country affixed thereto. The records and judicial proceedings of the courts of any state . . . shall be proved or admitted in any other court within the United States by the attestation of the clerk and the seal of the court annexed, . . . together with a certificate of the judge, chief justice, or presiding magistrate that the said attestation is in due form. And the said records and judicial proceedings, so authenticated, shall have such faith and credit given to them in every court within the United States as they have by law or usage in the courts of the state from which they are taken." U. S. R. S., *s.* 905.

By this statute the mode of authentication of both state statutes and of the judgments of state courts, and the effect of such judgments in other states, are determined. *Mills* v. *Duryee,* 7 Cranch 481; *Booth* v. *Clark,* 17 How. 322. But nothing is said as to the effect of a state's "public acts"; nor, so far as we have been able to ascertain, is there a word to be found touching their meaning, or relating to the power of congress to prescribe their effect, in any judgment of the United States supreme court. Presumably, however, the words "public acts" mean "public statutes"; and the inference is strengthened by the first clause of the statute above cited.

Does the second clause of the first section of article 4 confer upon congress the power to prescribe the "effect" the statutes of one state shall have in another? Story says: "Some learned judges have thought that the word 'thereof' had reference to the proof or authentication, so as to read, 'and to prescribe the effect of such proof or authentication'; but that the sounder interpretation is, that it refers to the antecedent words, 'acts, records, and proceedings,' so as to read, 'and to prescribe the effect of such acts, records, and proceedings.'" 3 Sto. Const., *ss.* 1306, 1307.

That this is the correct view in respect to judgments is established. *Hanley* v. *Donoghue,* 116 U. S. 1; *Renaud* v. *Abbott,* 116 U. S. 277. "But congress has never acted on the power in the constitution as to the public acts or laws of the states any further than to declare that they shall be authenticated by having the seals of the respective states affixed thereto." Sedg. Stat. Law 63.

If it is an evil that the laws, or any particular class of laws, of one state cannot be directly enforced in another, the mischief can be easily cured by congress. It can, for example, provide by general law that the statutes of any state, making stockholders of a corporation in any manner or form liable for the debts of the corporation, shall have the same force and effect in any other state; or, more generally, that every statutory cause of action that may accrue to one person against another in one

state, including or excluding penal actions, shall be enforceable in every other state; or, any obligation not penal, accruing to one person from another under the law of any state, shall be equally obligatory upon and enforceable against the obligor in any state where he may be found. And, in the absence of such action by congress, the legislature of this state might provide that all causes of action arising in other jurisdictions should be enforced here by the same method of procedure as there provided,— as, e. g., it has done in regard to wills. P. S., c. 186, s. 5.

If the remedy would be worse than the disease,— if any federal statute on the subject in the power of congress to enact, or any statute within the authority of our legislature to adopt, would create more evils than it would cure (2 Kent 117, 118),— it affords a sufficient and, as we think, a decisive reason against the policy, if not the power, of enforcing such obligations without a statute.

It is universally agreed that the laws of a state have, *ex proprio vigore*, no extra-territorial force,— that is to say, no state "can by its laws directly affect or bind property out of its own territory, or bind persons not resident therein." Sto. Conf. Law, ss. 18, 20, 23; 2 Kent 457. It is with equal unanimity agreed that "by comity," as it is termed, foreign laws, so far as they enter into and form a part of contracts or operate upon any common-law cause of action there arising, will be given the same effect they there have in every jurisdiction where the contract or cause of action is sought to be enforced. 2 Kent 117, 118. The law "forms . . . a part of the contract, and travels with it wherever the parties to it may be found." *Ogden* v. *Saunders*, 12 Wheat. 213, 259; *Bliss* v. *Houghton*, 16 N. H. 90, 91, 92; *Watriss* v. *Pierce*, 32 N. H. 560, 582. So in actions for torts at common law, committed in foreign lands, the statutes of that country are observed only so far as they have there operated upon the cause of action as to modify or destroy it. *Henry* v. *Sargeant*, 13 N. H. 321; *Steam etc. Co.* v. *Guillou*, 11 M. & W. 877. The plaintiff in such cases seeks to enforce no right or claim arising or accruing to him under any law or statute of the foreign country (*Henry* v. *Sargeant, supra*, 332) but his common-law right, — a right recognized and enforced in all civilized nations. Neither does the defendant seek to enforce any law of the foreign land except in so far as it has there operated on the cause of action sought to be enforced against him.

In the case of contracts, the common law enforces the contract made by the parties, but not the *lex loci*, except in so far as they have made it a part of the contract. The doctrine that contracts are to be interpreted according to the law of the place where they are made or to be performed, is merely a rule for

finding the intention of the parties. *Peninsular etc. Co.* v. *Shand,* 3 Moore P. C. N. S. 272; *Anstruther* v. *Adair,* 2 Myl. & K. 513. "A different decision would totally defeat the intention of the contracting parties." *Di Sora* v. *Phillips,* 10 H. L. Cas. 624, 638, 639. The only purpose of the proof of the foreign law is to determine the meaning of the language used by the parties,— for the same reason precisely that evidence is heard of the sig-, nification of technical terms. *Prentiss* v. *Savage,* 13 Mass. 20, 23; *Koster* v. *Merritt,* 32 Conn. 246; *Dyke* v. *Railway,* 45 N. Y. 113, 118. The foreign law as such, and *ex proprio vigore,* has no effect. Effect is given to the agreement of the parties only. The court looks into the *lex loci* so far, and only so far, as may be necessary to determine what the contract is, and whether it shall be enforced, if at all, according to the intention of the parties. This is not a matter of courtesy or favor, either to the country where the contract was made or to the parties. It is the right of the parties; it is as if the foreign law were in terms expressed in the contract. The principle " loosely called comity" (*Schibsby* v. *Westenholz,* L. R. 6 Q. B. 155, 159) " is not of courts but of nations." Sto. Conf. Law, ss. 37, 38; *Bank of Augusta* v. *Earle,* 13 Pet. 519, 589.

Can, at common law, an action be maintained in one state to enforce a personal right or liability not recognized or known to that law, but created solely by the statute of another state ? It appears to us clear that it cannot without repealing the univer- sally established doctrine that the laws of one state can, *ex pro- prio vigore,* have no force or effect in another state. Such an action can only be sustained by the direct force of the statute. It must be specially declared upon, or, at all events, the facts must be so alleged that the court, on the face of the declaration, can see that the action is founded on the statute. 1 Ch. Pl. 272, 273, and cases cited in note 1; *Smith* v. *Woodman,* 28 N. H. 520, 528, and cases cited; *Henniker* v. *Railroad,* 29 N. H. 146, 152. The cause of action could arise nowhere except in the state where the statute exists. The action is therefore local. " If the cause of action is one that might have arisen anywhere, then it is transitory; but if it could only have arisen in one place, then it is local." Cool. Torts 471; Steph. Com., as cited in Whart. Conf. Law, s. 710. By the common law, an action cannot be sustained upon a local cause of action that has arisen in a foreign country. *Daniel* v. *Phillips,* 4 T. R. 499, 503; *Whit- aker* v. *Forbes,* 1 C. P. Div. 51, 52; *Watts* v. *Kinney,* 23 Wend. 484; Poll. Torts 175, 176; Rorer Int. St. Law, 145.

The question of the enforcement of the laws of a foreign state is not a question of comity to that state, but of the power of the courts of the forum. The organic, or statute, or common law of no state in the Union has conferred upon its courts authority

to put into active operative effect, efficient *per se,* the statutes of another state.   There is a wide difference between putting a foreign statute in active operation and treating a transaction of which the court has jurisdiction as it is modified, affected, or characterized by the law that operated upon it where it took place.   To enforce a liability created solely by the statute of a foreign land, is to give that statute precisely the same force and effect as if it were a statute of the forum.

Coming directly to the case in hand, the first inquiry (although not one of controlling importance) suggested by the views we have expressed is, whether the liability sought to be enforced is statutory or contractual.

It must in fairness be conceded that a majority of courts hold such a liability to be contractual; but to this doctrine we cannot assent.   True, the defendant, by virtue of his ownership of five shares of the capital stock of the Corn State Bank, became obligated to pay any unsatisfied judgment creditor of the corporation a sum not exceeding the par value of his shares.   But how did he become obligated ?   Not by virtue of any contract,— not because he expressly or tacitly agreed to be so obligated,— but solely because the law of Kansas imposed the obligation upon him as a secondary and subsidiary liability for the corporation's debts.   To adopt the language of another court in a similar case : " Certainly the ordinary elements of a contract are wanting. The minds of the stockholder and corporation creditor have not met upon the subject-matter of the original debt; no credit has been given to the stockholder directly; he has not directly received the consideration, nor has he made a promise, express or implied.   There is nothing between them which at common law would be regarded as a contract.   But the statute imposes a liability upon grounds of equity and public policy. . . . We are aware that the greater number of cases call the liability a contract, and, undoubtedly, the relation of a stockholder to a corporation has certain equitable features both of a contract and a guaranty; but we think it much more accurate to say that the liability is a statutory liability simply, incidental to the ownership of stock, than to say that it is a contract." *Hancock Nat'l Bank* v. *Farnum,* 20 R. I. 466, 471.   See, also, *Marshall* v. *Sherman,* 148 N. Y. 9, 20.

It is useless, however, to dwell further upon the inquiry, because it has been already answered in this jurisdiction by *Rice* v. *Hosiery Co.,* 56 N. H. 114, 128, wherein it is said,— and in accordance with sound reason, as we think,— " The liability which the plaintiff seeks to enforce is a mere creature of the statute, having none of the elements of a contract, whether express or implied.   It is a naked, statutory liability, entirely unknown to the common law, for the indebtedness of the cor-

poration, however it may accrue, whether from the breach of a contract or the commission of a tort. The stockholder is not liable upon the contract in the one case, nor for the tort in the other, but, under the statute, for the debt against the corporation which may grow out of either." For additional authorities which hold that the liability of a stockholder is statutory merely, see: *Terry* v. *Little*, 101 U. S. 216, 217; *New Haven etc. Co.* v. *Spring Co.*, 142 Mass. 349, 353; *Brown* v. *Slate Co.*, 134 Mass. 590, 591; *Halsey* v. *McLean*, 12 Allen 438, 440, 442; *Knowlton* v. *Ackley*, 8 Cush. 93, 96; *Gray* v. *Coffin*, 9 Cush. 192, 199; *Cady* v. *Sanford*, 53 Vt. 632, 637, 638; *Libby* v. *Tobey*, 82 Me. 397; *Wing* v. *Slater*, 19 R. I. 597; *Sayles* v. *Bates*, 15 R. I. 342; *Slee* v. *Bloom*, 20 Johns. 669, 684; *Bullard* v. *Bell*, 1 Mason 243, 288; 23 Am. & Eng. Enc. Law 871.

But, irrespective of the foregoing considerations, we are of opinion that the plaintiffs' claim is not enforceable in this jurisdiction upon any just obligation of comity. The provision of the Kansas constitution appearing in the case is plainly not self-executing, and of itself creates no liability whatever. *Hancock Nat'l Bank* v. *Farnum*, supra, 343; *Marshall* v. *Sherman*, supra, 18, and authorities cited. The only real basis of the plaintiffs' right of action, legal, moral, or equitable, is the *fiat* of the Kansas legislature; for if it be conceded (contrary to the fact, as we understand it to be) that the courts of that state have directly held that the relation of a stockholder to creditors is contractual, the holding is properly to be regarded as a decision on general legal principles merely, and, as such, not binding upon us. Opinions of courts are not judgments to which full faith and credit must be given under the federal constitution, and there is no rule of comity or law which requires that such opinions should be followed in their interpretation of general legal principles by the courts of other states.

As before stated, it is a principle of universal acceptation in all civilized states that the statutes of one state do not operate extra-territorially, *proprio vigore*, in another. "How far they should be enforced beyond the limits of the state which has enacted them must depend on several considerations; as whether any wrong or injury will be done to the citizens of the state in which they are sought to be enforced, whether the policy of its own laws will be contravened or impaired, and whether its courts are capable of doing complete justice to those liable to be affected by their decrees." *New Haven etc. Co.* v. *Spring Co.*, 142 Mass. 349, 353, *per Devens*, J.; *Rice* v. *Hosiery Co.*, supra, 114, 127, 128. Whether such statutes should be enforced in another state it is exclusively for that state to determine. The doctrine of comity "owes its origin and authority to the voluntary adoption and consent of nations." Sto. Conf. Law, *s.* 36. Its true scope and

extent each sovereignty has the right to determine for itself; and it " must be the final judge for itself, not only of the nature and extent of the duty, but of the occasions on which its exercise may be justly demanded." *Ib.*, s. 33.

In our opinion, when the rights sought to be passed upon and determined are those which arise from the relation between a corporation and its creditors and stockholders, they justly depend upon the local law which exists at the place of the corporation's creation, and true policy requires us to leave them to be there determined, regardless of any question of power on our part to enforce them.

And this would seem to be especially so in the case at bar. The alleged obligations of the defendant as a stockholder of the corporation are essentially different from those which arise in this state from that relation, and, furthermore, the plaintiffs properly concede that their form of procedure should have been by an action at law. " The individual liability of stockholders in a corporation for the payment of its debts is always a creature of statute. At common law it does not exist. The statute which creates it may also declare the purposes of its creation, and provide for the manner of its enforcement "; and when it does, " the remedy provided is exclusive of all others, . . . and that alone must be employed." *Pollard* v. *Bailey*, 20 Wall. 520, 526, 527; *Fourth Nat'l Bank* v. *Francklyn*, 120 U. S. 747, 756, 758. " By the statutes of New Hampshire, proceedings to enforce the liability of stockholders, under our laws, must be by bill in chancery. A creditor seeking to enforce it must join in the suit all the parties in interest who can be affected by the decree; the suit must be prosecuted for the benefit of all the creditors, and not for a portion of them. All the stockholders who can be reached by the process must be made defendants. The corporation itself must also be joined;— and thus, by avoiding a multiplicity of suits, the whole liability of the corporation is apportioned among the solvent stockholders, who can be reached by the process of the court, and by the decree each stockholder is compelled to pay his proportionate share of the debts; and thus, in one suit, the affairs of the corporation are practically wound up, and its burdens distributed among the share-owners." *Rice* v. *Hosiery Co.*, *supra*, 128 ; *Erickson* v. *Nesmith*, 46 N. H. 371; *Hadley* v. *Russell*, 40 N. H. 109.

But not only are the Kansas statutes relating to the liability of stockholders and its enforcement radically different in theory and practice from ours, but there is no way in which they can be enforced here so as to secure substantial justice, according to the New Hampshire understanding and interpretation of that term. The practical difficulties are numerous, patent, and insuperable. As is said in *Bank of North America* v. *Rindge*, 154

Mass. 203, 205, 206, 207: "If the plaintiff, as a creditor of the Kansas corporation, . . . can maintain an action . . . against him [the defendant] in Massachusetts for the purpose of charging him as a 'stockholder, . . . then it would follow that the plaintiff might also institute a similar action against him in California, or in any number of other states where service upon him could be obtained. The plaintiff might also institute similar actions for the same debt in different states against other stockholders. In such case, it is probable that a judgment against one stockholder without satisfaction would be no bar to actions against others; but it is obvious that the defendants in such actions might be put to great inconvenience in ascertaining, and indeed might find it practically impossible to ascertain, what steps the plaintiff might have taken against other stockholders in other states. A dishonest creditor might possibly recover several times over against different stockholders in different states, before they respectively could ascertain the facts. Likewise, the defendant, if compelled to pay under a judgment recovered in one state, would find it difficult, if not impossible, to enforce contribution from other stockholders residing elsewhere. Moreover, if the plaintiff might maintain such actions against the defendant and against other stockholders in different states, until he should finally recover satisfaction, other creditors of the Kansas corporation might also do the same. If every creditor of a Kansas corporation which has no property with which to respond to a judgment obtained by such creditor against it in Kansas may thereupon, without any further proceedings in that state to. charge the stockholders, maintain an action against every stockholder in every state in the Union where service can be obtained, and pursue such action until satisfaction is obtained from some stockholder in some state, it is obvious that a large amount of litigation might ensue under which substantial justice as among the stockholders could not be worked out. . . . In case of several actions in different states, questions of priority of the claims of creditors might arise upon which the decisions of the courts of the different states might not be uniform, and thus the defendant might be held liable more than once. . . . These considerations are suggested' to illustrate the practical difficulty of enforcing a liability such as that set forth in the declaration in other states than that where the corporation is established in such a way as to secure substantial justice. This difficulty is far greater in cases where no steps have been taken in the state where the corporation is established to ascertain and determine the amount of each stockholder's liability. There the whole amount of debts can be ascertained and the proper proportion assessed upon each stockholder; or his liability can be otherwise determined in a manner which will avoid many of the objections

which exist against the maintenance of actions like the present. We remain satisfied with the conclusions heretofore reached by this court that such an action, under the circumstances which appear here, ought not to be entertained in this state." See, also, *New Haven etc. Co.* v. *Spring Co., supra*, 353, 354, and cases cited. It is true that under a recent Massachusetts decision by a divided court (*Hancock Nat'l Bank* v. *Ellis*, 172 Mass. 39), it must be understood that such an action will now be entertained in that state; but the reasons given in the decision are so unsatisfactory to our minds that we have felt no hesitation in quoting with approval from former decisions of that court to the contrary, which, in our judgment, are so clearly founded on reason and justice as to merit universal approbation.

So, also, it is said by the New York court of appeals, in an action upon the statute now under consideration : " The statute in question, while creating a certain liability on the part of a stockholder to a creditor of the corporation, at the same time gives to the former certain rights as against his fellow-stockholders for contribution. It should be administered in such a way as to secure the rights of all in the same action. This is the interpretation which we have given to our own statutes enacted for a similar purpose. It is clear that this cannot be done in this action, since the theory of the plaintiff is, that the defendant is liable in successive actions at law by creditors, suing separately, until he has paid a sum equal to his stock, and then he must resort to some other jurisdiction for contribution. This would be most unjust and oppressive, and it is safe to say that no well-considered case can be found that sanctions such a principle. While this is not an action for a penalty, yet we think it belongs to a class of cases in which there is no obligation, under any well-recognized principle of the law of comity, to enforce a claim founded upon such a statute. Moreover, the right asserted and the remedy provided are of such nature that they cannot be given any practical effect here without injustice to our own citizens. We are virtually asked to ignore our own rules of construction and methods of procedure in order to compel the defendant to pay to foreign creditors a sum equal to his holdings of stock, without any power to inquire into the necessity for it by an accounting, or to secure to him any recourse against others equally liable. When the courts of this state are asked to administer the statutes of Kansas, and we can see that the case is surrounded by such complications, and the circumstances are such that it cannot be done without injustice to our own citizens, or that it will be impossible to do full and complete justice to all the parties in interest, it is reasonable and just to decline to administer them at all." *Marshall* v. *Sherman, supra*, 28, 29. See, also : *May* v. *Black*, 77 Wis. 101; *Wyman* v. *Eaton*, 107 Ia.

214; *Nimick* v. *Iron Works Co.*, 25 W. Va. 184; *Smith* v. *Hucka-bee*, 53 Ala. 191, 196, 197.

It would occupy too great a space, and is not within the time at our disposal, to consider other objections to the plaintiffs' recovery, although " Alps on Alps arise." " There are certain . . . principles of justice which never ought to be dispensed with, and which courts of justice never can dispense with, but when compelled by positive statute " (*Mills* v. *Duryee*, 7 Cranch, 481, 486); and it is enough to say, that it is only by force of such a statute that the plaintiffs' cause of action, whatever may be its form, can be sustained in this jurisdiction.

                                                                            *Bill dismissed.*

All concurred.