Cheshire
No. 84-272

GEORGE H. GILMAN, ADM'R OF THE ESTATE OF
JOSEPH L. GILMAN, SR.

v.

COUNTY OF CHESHIRE

April 19, 1985

*Douglas K. Watson*, of Keene, by brief and orally, for the plaintiff.

*Faulkner, Plaut, Hanna, Zimmerman & Freund*, of Keene, and *Morgan, Brown & Joy*, of Boston, Massachusetts (*George R. Freund, Jr.*, and *Nicholas DiGiovanni, Jr.*, on the brief, and *Mr. DiGiovanni* orally), for the defendant.

DOUGLAS, J.   In this appeal from a ruling of the superior court, we are asked to determine whether the plaintiff's decedent had a vested right to payment for certain accumulated, but unused, sick leave from a public employer. We hold that he did and affirm.

The parties agree to the following facts. The plaintiff, George H. Gilman, is the administrator of the estate of Joseph L. Gilman, Sr. The plaintiff's decedent was employed as a guard at the Cheshire County House of Correction for nine years prior to his death on October 4, 1982.

During the decedent's nine-year employment with the defendant County of Cheshire (county), the county revised its sick leave policies several times. Prior to September 24, 1980, the county's sick leave policy granted employees two weeks of sick leave per year. Employees were allowed to accumulate unused sick leave up to 90 days. There was no provision for compensation for accumulated, but unused, sick days. Effective September 24, 1980, the county adopted the following amendment to its sick leave policy:

> *"Accrued Sick Pay Payment:* After five (5) years of continuous employment, if an employee terminates voluntarily for other than cause, all accrued sick pay will be paid at the regular rate (in existence at the time of retirement or termination) in weekly payments until all accrued sick benefits are used up. Except that if any employee retires, he will be paid in a lump sum at the time of his or her retirement."

On May 19, 1982, a new sick leave policy was adopted. It provided:

"Sick leave shall be accumulated at a rate of .83 days per month. Sick days may be accumulated to a maximum of sixty (60) days.

Upon accumulation of sixty days sick leave by an employee, all sick leave days which the employee accumulates during each subsequent year after reaching the maximum shall be paid to the employee at the end of each year, at the rate of one-half day per day accumulated. Employees may not carry over such compensation to subsequent years.

Employees who currently have over sixty (60) days may keep such days, but they may not accumulate any further sick days. However, employees who currently have over sixty days accumulated may convert the excess number over sixty days into compensation at the rate of one-half day per day accumulated. . . . This one-time option must be exercised, in writing, not later than November 1, 1982."

At the time of his death, the decedent earned $6.44 per hour and had accumulated 693.59 sick pay hours (86.698 days), of which 662.79 sick pay hours (82.849 days) were earned prior to May 19, 1982. The decedent did not exercise the one-time conversion option included in the 1982 policy.

In November 1982, the county paid Mr. Gilman's estate $683.15, representing what it determined to be the value of the decedent's accumulated sick leave at the time of his death. In arriving at this figure, the county applied the May 1982 sick leave policy. It determined that Mr. Gilman had accumulated 26.69 days in excess of the 60-day limit, and it valued those days at a rate of one-half day per day accumulated.

The plaintiff then filed the instant action against Cheshire County seeking damages in the amount of $3,590.43, together with interest, costs and reasonable attorney's fees. The plaintiff alleged that this figure represented the balance due the decedent's estate for the value of unused sick days which had been accumulated by the decedent during his nine-year tenure with the county and which had vested under the September 24, 1980 policy. The county denied the plaintiff's claim.

The Superior Court (*O'Neil*, J.) determined that the decedent's right to compensation for all sick leave which was accumulated prior to May 19, 1982 was vested under the September 24, 1980,

policy and that, therefore, decedent's estate was entitled to payment for such sick leave in accordance with the 1980 policy. The county appeals this ruling.

On appeal, the county argues that the superior court erred in concluding that the decedent had a vested right to payment for sick leave under the 1980 policy. In essence, the county's argument is that the decedent had no present interest in sick leave benefits under the 1980 policy, but a mere expectancy of a future benefit. The county contends that for the decedent to have had a vested right to sick leave benefits under the 1980 policy, he had to satisfy two conditions while the policy was in effect: first, he had to meet a service requirement of five continuous years of employment; and, second, he had to terminate his employment voluntarily. It is the county's position that since the decedent did not satisfy the second condition, he never obtained a vested right to payment for sick leave under the 1980 policy and, consequently, his rights were to be determined under the policy in effect at the time of his death.

"'Generally, [the] term "vested right" expresses [the] concept of present fixed interest, which in right reason and natural justice should be protected against arbitrary state action . . . .' A vested right cannot be contingent nor a mere expectancy of a future benefit." *Christian v. County of Ontario*, 399 N.Y.S.2d 379, 381 (Sup. Ct. 1977) (quoting 16 C.J.S. *Constitutional Law* § 215 n.71(5) (1956)). As more fully discussed below, we disagree with the county's claim that the decedent's right to payment for accumulated, but unused, sick days created only a mere expectancy of a future benefit and, thus, that the decedent had no vested right to payment for accumulated, but unused, sick leave under the 1980 policy.

At the outset, we recognize that some courts have held that sick leave benefits are mere contingencies or gratuities, creating only an expectancy in a future benefit, which can be abolished at the will of the public employer. *See, e.g., City of North Little Rock v. Vogelgesang*, 273 Ark. 390, 619 S.W.2d 652 (1981); *Marsille v. City of Santa Ana*, 134 Cal. Rptr. 743 (Ct. App. 1977); *McCarty v. City of Rockford*, 96 Ill. App. 3d 531, 421 N.E.2d 576 (1981). This court, however, does not subscribe to that view.

In New Hampshire, sick leave benefits, where authorized in the terms of employment, are considered "an integral part of the public employee's contemplated compensation." *Jeannont v. N.H. Personnel Comm'n*, 118 N.H. 597, 601, 602, 392 A.2d 1193, 1196 (1978); *State Employees' Ass'n of N.H. v. Belknap County*, 122 N.H. 614, 621, 448 A.2d 969, 972 (1982). "Such benefits are a means by which the [governmental employer] can attract qualified persons to

enter and remain in [governmental] employment, and an employee accepts an offer of employment or continues in employment . . . in reliance on the [governmental employer's] representations that it will provide such benefits." *Jeannont v. N.H. Personnel Comm'n supra; see also State Employees' Ass'n of N.H. v. Belknap County supra.* Because such benefits constitute a part of an employee's compensation, they form a part of the employment contract, and the right to receive such benefits vests at the time one becomes a governmental employee or continues in such employment. *Jeannont v. N.H. Personnel Comm'n supra; State Employees' Ass'n of N.H. v. Belknap County supra.*

■ Payment for sick leave, where authorized in the terms of the employment, is not a mere gratuity, but constitutes compensation for services rendered. Such payment is in the nature of deferred compensation in lieu of wages earned. Once the services are rendered, the right to receive the promised compensation vests.

■ In the instant case, services were rendered under the 1980 policy, and sick leave benefits under that policy were a part of the compensation for those services. The decedent earned certain benefits, the payment for which was to be made at a future date. Although the payment of those benefits was deferred, the employer ould not impair its obligation to pay those benefits by changing its sick leave policy after the compensation was earned so as to divest the rights of those already benefiting from it.

Our holding is in accord with the law of several other jurisdictions. *See, e.g., Logue v. City of Carthage,* 612 S.W.2d 148 (Mo. App. 1981); *Vangilder v. City of Jackson,* 492 S.W.2d 15 (Mo. App. 1973); *Christian v. County of Ontario,* 399 N.Y.S.2d 379 (Sup. Ct. 1977); *South Euclid Fraternal Order of Police v. D'Amico,* 468 N.E.2d 735 (Ohio App. 1983); *City of Orange v. Chance,* 325 S.W.2d 838 (Tex. Civ. App. 1959).

In addition, our holding facilitates one of the primary purposes of providing benefits to public employees; namely, to induce competent persons to enter and *remain* in public employment. *Jeannont v. N.H. Personnel Comm'n,* 118 N.H. at 601–02, 392 A.2d at 1196 (1978); *State Employees' Ass'n of N.H. v. Belknap County,* 122 N.H. at 621, 448 A.2d at 972. Benefits would serve as little inducement if they could be whisked away at the whim of the public employer. In many instances, the employee would have no assurance of receiving promised benefits unless he terminated employment while favorable policies were still in effect. Moreover, in the end, benefits "would become merely a snare and a delusion to the unwary," *Kern v. City of Long Beach,* 29 Cal. 2d 848, 856, 179 P.2d 799, 803 (1947), the

functional equivalent of the consumer fraud "bait and switch" routine.

We find no merit in the defendant's claim that the decedent furnished no consideration for the promise that he would receive benefits under the 1980 policy. The defendant continued his employment with the understanding that, upon voluntary termination, he would receive compensation for all accumulated sick leave, up to 90 days, at his regular rate of pay. Since that policy was part of his inducement to continue his employment and is regarded as part of his employment contract, the defendant cannot now deprive the decedent of the earned compensation.

In conclusion, this opinion should not be read to preclude employers from modifying the terms of employment. Rather, this opinion merely limits the ability of an employer to modify rights which have vested under the previous terms of employment.

Accordingly, we affirm the superior court's conclusion that the decedent's estate is entitled to full payment for all accumulated sick leave earned prior to May 19, 1982.

The defendant next argues that the superior court erred in granting attorney's fees to the plaintiff under RSA 275:53, III. The defendant argues that because this action was not brought pursuant to RSA 275:53, the plaintiff is not entitled to attorney's fees under that provision or, alternatively, that the award of attorney's fees in this case was an abuse of discretion.

██ Under RSA 275:53, III, "[t]he court in any action brought under this subsection may, in addition to any judgment awarded to the plaintiff . . . , allow costs of the action, and reasonable attorney's fees, to be paid by the defendant." "It is generally held that where a remedy is given by statute, the statute 'must be specially declared upon, or, at all events, the facts must be so alleged that the court, on the face of the declaration, can see that the action is founded on the statute.'" *Fasekis v. Company*, 93 N.H. 468, 471, 44 A.2d 817, 819 (1945) (quoting *Crippen v. Laighton*, 69 N.H. 540, 550, 44 A. 538, 542 (1899)).

██ "RSA ch. 275 is entitled 'Protective Legislation,' and we should construe it with that purpose in mind." *Caswell v. BCI Geonetics, Inc.*, 121 N.H. 1048, 1049, 437 A.2d 321, 322 (1981). RSA 275:53 pertains to actions by employees to recover unpaid wages and provides that an "[a]ction by an employee to recover unpaid wages and/or liquidated damages may be maintained in any court of competent jurisdiction . . . ." RSA 275:53, I. RSA 275:43, III (since amended) provides, in pertinent part, that "the term 'wages' means compensation . . . or other agreement adopted for the benefit of an

employee and agreed to by his employer, for labor or services rendered by an employee . . . ."

The writ filed in the instant case clearly alleged that the decedent, an employee of the county, was entitled to compensation for certain sick leave days accrued under a policy adopted by the county. Sick leave benefits, which constitute compensation for services rendered, *Jeannont v. N.H. Personnel Comm'n*, 118 N.H. 597, 601–02, 392 A.2d 1193, 1196 (1978), certainly are "wages" under the statute. It is clear that the instant action, which concerns unpaid wages, falls within the subdivision of the chapter at issue. We therefore conclude that the superior court could reasonably find that the action was founded on the statute. *See Smith v. Hallahan*, 75 N.H. 534, 535, 78 A. 122, 123 (1910).

We are not persuaded that the novelty of this case, the cooperation of the county with the plaintiff in this suit, or the absence of bad faith on the county's part are adequate to demonstrate an abuse of discretion by the trial court in granting attorney's fees under RSA 275:53. *See Ransmeier v. Time Share Corp.*, 115 N.H. 300, 301, 338 A.2d 550, 551 (1975). Accordingly, we find no error in the court's award of attorney's fees to the plaintiff.

*Affirmed.*

All concurred.