835 So.2d 845 (2002)
Charles R. TRIGG and Penny Potts Trigg
v.
PENNINGTON OIL COMPANY, INC. and C.B. Pennington, Individually and as President and Owner of Pennington Oil Company, Inc.
No. 2001 CA 2822.
Court of Appeal of Louisiana, First Circuit.
November 8, 2002.
*846 J. Arthur Smith, III, Fred G. Benton, Jr., Baton Rouge, for PlaintiffsAppellants Charles R. Trigg and Penny Potts Trigg.
Charles S. McCowan, Jr., Bradley C. Myers, Lana D. Crump, for Defendants Appellees Pennington Oil Company, Inc. and Claude B. Pennington, III, In His Capacity As Executor For The Succession of Claude B. Pennington, Sr.
Before: FOIL, FOGG, and KLINE,[1] JJ.
FOGG, J.
In this contract action, the plaintiffs appeal the trial court's grant of summary judgment in favor of the defendant and the dismissal of their lawsuit. For the following reasons, we affirm.
On April 17, 1991, Charles R. Trigg and his wife, Penny Potts Trigg, filed this contract action, naming as defendants C.B. Pennington,[2] individually and as chief executive officer of Pennington Oil, and Pennington Oil, and seeking to recover retirement benefits[3] allegedly due Mr. Trigg under a contract of employment he had with Pennington Oil.
Pennington Oil responded by filing a motion for summary judgment, which was denied by the trial court. The defendants filed applications for supervisory writs with this court as well as the Louisiana Supreme Court; both were denied without comment. In 1992, defendants filed a second motion for summary judgment, which was also denied by the trial court.
On June 13, 2001, the defendants filed a third motion for summary judgment. On October 2, 2001, the trial court rendered judgment, granting the defendants' motion for summary judgment and dismissing the plaintiffs' lawsuit with prejudice. The Triggs appeal.
Initially, we reject the Triggs' assertion that the law of the case doctrine precluded the trial court from adjudicating the merits of the defendants' third motion for summary judgment. In Melton v. Miley, *847 98-1437 (La.App. 1 Cir. 9/24/99), 754 So.2d 1088, this court held that a trial court can rehear a motion for summary judgment after previously denying the motion. Also, in the cases of Francioni v. Rault, 570 So.2d 36 (La.App. 4 Cir.1990), writ denied, 575 So.2d 371 (La.1991) and Efferson v. Link Belt Corp., 476 So.2d 528 (La.App. 1 Cir.1985), the courts found it was not error for a trial court to consider a re-urged motion for summary judgment. See also Young v. Dupre Transport Co., 97-0591 (La.App. 4 Cir.10/1/97), 700 So.2d 1156; Metz v. Nichols Constr. Corp., 615 So.2d 967 (La.App. 1 Cir.1993). Accordingly, we find no error in the trial court's consideration of the defendants' third motion for summary judgment.
The appellants also assert that the trial court erred in granting summary judgment as genuine issues of material fact remain. Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. The motion should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B).
It is undisputed that, in the summer of 1982, C.B. Pennington, the Chief Executive Officer of Pennington Oil, offered Mr. Trigg employment at a salary of $36,000 per year, with two weeks of vacation the first year, a health insurance policy, a life insurance policy of $25,000, and although none was in place at the time, a retirement plan in the near future. It is also undisputed that Mr. Trigg was an at-will employee, employed under an oral contract for no specific term.
The retirement plan was never implemented. According to Mr. Trigg, each time he asked about the plan, Mr. Pennington answered, "We still haven't made a decision on it." Mr. Trigg's employment with Pennington Oil ended on April 18, 1990. By deposition, several other employees of Pennington Oil testified that Pennington Oil did not have a retirement plan in effect when they were hired or during the time they were employed by Pennington Oil.
In support of their assertion that there exist genuine issues of material fact, the Triggs refer to the deposition testimonies of other employees of Pennington Oil wherein they stated that they, too, were promised retirement benefits as part of their employment benefits package and that statements made by C.B. Pennington in his video deposition were untrue.
A "fact" is "material" if its existence or nonexistence may be essential to a party's cause of action under the applicable theory of recovery. Penalber v. Blount, 550 So.2d 577 (La.1989). Although the factual content of the depositions is inconsistent, the inconsistencies are not as to material facts; therefore, they do not preclude summary judgment.
Finally, the Triggs assert that the defendants are not entitled to judgment as matter of law. We disagree. In Wall v. Tulane Univ., 499 So.2d 375 (La.App. 4 Cir.1986), writ denied, 500 So.2d 427 (La. 1987), the court affirmed a summary judgment dismissing the claim of a university employee who asserted he had foregone more lucrative employment relying on the tuition waiver benefits described in the Tulane Staff Handbook. The court held that, because the employee was at-will, and the university made no promises as to the duration of the tuition waiver program, Tulane was free to terminate his employment or modify the benefits of that employment *848 at any time. Wall, 499 So.2d at 376. The court stated that the employee's subjective expectation that the tuition waiver program would not change was "not sufficient to raise a genuine issue of material fact." Wall, 499 So.2d at 375.
We find the facts of this case similar to those of the Wall case. Mr. Trigg was an at-will employee; he admits that he was never promised a specific type of retirement plan. As comptroller of the company; he knew there was no retirement plan in place when he started with the company or any time during his tenure with the company. Consequently, Pennington Oil was free to modify the terms of his employment at any time.
Therefore, the defendants successfully carried their burden of proving that no genuine issues of material fact exist and that they are entitled to judgment as a matter of law. The trial court correctly granted the motion for summary judgment.
For the foregoing reasons, the judgment of the trial court is affirmed. Costs are assessed against the appellants, Charles R. Trigg and Penny Potts Trigg.
AFFIRMED.
KLINE, J., dissents with reasons.
KLINE, Judge, dissenting.
I respectfully dissent in part with the majority report. I agree that the trial court is not precluded from rehearing the motion for summary judgment, however, I disagree with the trial court's grant of defendant's motion for summary judgment. The two prior rulings to deny were correct. The majority reasons that although the factual representations in the depositions are inconsistent, they are not so as to material facts and that the "at-will" employee was without a legal remedy because of his status.
The majority appropriately recites and the record supports the following:
It is undisputed that, in the summer of 1982, C.B. Pennington, the Chief Executive Officer of Pennington Oil, offered Mr. Trigg employment at a salary of $36,000 per year, with two weeks of vacation the first year, a health insurance policy, a life insurance policy of $25,000, and although none was in place at the time, a retirement plan in the near future. It is also undisputed that Mr. Trigg was an at-will employee, employed under an oral contract for no specific term.
The retirement plan was never implemented. According to Mr. Trigg, each time he asked about the plan, Mr. Pennington answered, "We still haven't made a decision on it." Mr. Trigg's employment with Pennington Oil ended on April 18, 1990.
There was an inducement by the employer for the employee to initially accept employment and a recurring representation by the employer during the period of employment that the promised retirement plan was still a viable concept. It appears that for plaintiff's eight years of work life in the employ of the defendant that he, with others, had a reasonable expectancy that the promise of retirement benefits would be kept. Reliance thereon was contemplated and reasonable.
Although the case of Knecht v. Board of Trustees for State Colleges and Universities and Northwestern State University, 591 So.2d 690 (La.1991), may be factually different, the principle of law expressed is appropriate:
Nearly every state has determined, using precepts similar to our civilian principles, that when an employer promises a benefit to employees, and employees accept by their actions in meeting *849 the conditions, the result is not a mere gratuity of illusory promise but a vested right in the employee to the promised benefit. See, e.g., T.L. James & Co. v. Montgomery, 332 So.2d 834 (La.1976); Hoffman-La-Roche v. Hugh Campbell, 512 So.2d 725 (Ala.1987); Gesina v. General Electric Corp., 162 Ariz. 35, 780 P.2d 1376 (Ct.App.1989); Sterling Drug Inc. v. Oxford, 294 Ark. 239, 743 S.W.2d 380 (1988); Libby v. Calais Regional Hospital, 554 A.2d 1181 (Me.1989); Toussaint v. Blue Cross & Blue Shield of Michigan, 408 Mich. 579, 292 N.W.2d 880, 893 (1980); Southwest Gas Corp. v. Ahmad, 99 Nev. 594, 668 P.2d 261 (1983); Gilman v. County of Cheshire, 126 N.H. 445, 493 A.2d 485 (1985); Cantor v. Berkshire Life Insurance Co., 171 Ohio St. 405, 171 N.E.2d 518 (1960); Bellomini v. State Employees' Retirement Board of Pa., 498 Pa. 204, 445 A.2d 737 (1982); Textile Workers Union of America, Local # 513 v. Brookside Mills, 203 Tenn. 71, 309 S.W.2d 371 (1957); Ferraro v. Hyatt Corp., 124 Wis.2d 154, 368 N.W.2d 666 (1985). Courts have applied this rule to the governmental employer in the same manner that it applies to the private employer, rejecting the argument that a governmental employer bestows benefits on its employees subject to the employer's whim. Gilman, supra; Bellomini, supra.

Admittedly the plaintiff was an at-will employee, but it was the will of the employer to engage and continue his service for almost a decade.
If this at-will employee, because of his status as such, has no remedy in spite of his good faith reliance on the offer and promises of his employer, then the extensive labor force of the State of Louisiana in the same status are at peril and can find no relief under our laws for unfulfilled promises and representations.
Defendant's argument is acknowledged that had a plan of retirement been implemented, the defendant could change it at his whim so as to make it meaningless. This may be so, but "the carrot on the stick" continued to be dangled in front of the plaintiff and others to perhaps induce continued performance. The whim to diminish is conjectural when no plan was implemented.
I would afford this plaintiff the opportunity to endeavor to convince the trier of fact that he relied on the employer to his detriment.[1] When there is an uncertain time for performance, the obligation must be performed within a reasonable time.[2]
Also, admittedly there was no detailed or specific plan promised, and defendants rely upon this lack of detail to show not only that there is no enforceable promise and no offeracceptance contract, but even if there were such rights created, *850 then there is no way that the trier of fact could measure the damage. The custom of similar industries and experience factors with retirement plans may be offered as relevant to the trier of fact. The harm is not insusceptible of a reasonable measure.
In essence, it is my opinion that the fact that plaintiff was an at-will employee does not in itself afford the employer immunity for his inducements, promises, and offers that could be reasonably in good faith relied upon by plaintiff.
I would find that these are material issues of fact relative to genuine legal issues.
NOTES
[1] Retired Judge William F. Kline, Jr. is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] Subsequently, Claude B. Pennington, in his capacity as executor for the Succession of C.B. Pennington, was substituted as a defendant.
[3] The plaintiffs initially alleged additional causes of action; however, those were dismissed by the trial court and are not at issue in this appeal.
[1] Louisiana Civil Code Article 1967 provides:

Cause is the reason why a party obligates himself.
A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying. Recovery may be limited to the expenses incurred or the damages suffered as a result of the promisee's reliance on the promise. Reliance on a gratuitous promise made without required formalities is not reasonable.
[2] Louisiana Civil Code Article 1778 provides:

A term for the performance of an obligation is a period of time either certain or uncertain. It is certain when it is fixed. It is uncertain when it is not fixed but is determinable either by the intent of the parties or by the occurrence of a future and certain event.. It is also uncertain when it is not determinable, in which case the obligation must be performed within a reasonable time.