**Kenneth L. VANOUS, Appellant,**

v.

**CITY OF CEDAR RAPIDS, Appellee.**

No. 2–58098.

Supreme Court of Iowa.

June 29, 1977.

R. Fred Dumbaugh, Cedar Rapids, for appellant.

James A. Piersall, Asst. City Atty., for appellee.

Submitted to MOORE, C. J., and RAWLINGS, LeGRAND, REYNOLDSON and McCORMICK, JJ.

McCORMICK, Justice.

Plaintiff Kenneth L. Vanous brought this action against the City of Cedar Rapids to recover compensation which he claimed was owed to him upon his quitting the Cedar Rapids police department on January 24,

1974. The trial court allowed him $77.64. We reverse and remand for entry of judgment in his behalf of $4483.24.

■ The case was tried to the court at law. Findings of fact of the trial court have the force of a jury verdict. When supported by substantial evidence they must stand on appeal unless shown to have been induced by an erroneous view of the law. *Frantz v. Knights of Columbus*, 205 N.W.2d 705, 708 (Iowa 1973).

The facts are not disputed. Plaintiff commenced employment as a police officer with the City on March 1, 1954. The position was covered by civil service. See chapter 400, The Code. He rose to the rank of assistant chief, the position he held when he resigned from the department. The controversy in the present case is largely based on the manner in which he terminated his employment.

Under § 411.6(1)(c), The Code, plaintiff was entitled to obtain certain retirement benefits when he reached retirement age even if he terminated his employment prior to that time because he had been a member of the retirement system more than the minimum of 15 years. Retirement benefits under this provision are computed by use of a formula which takes into account years of service.

In November 1973 plaintiff obtained information from the police department bookkeeper purporting to show how much time off he had coming for various reasons. On November 28, 1973, he submitted a proposed work schedule to the acting chief of police and commissioner of public safety for the period November 30, 1973, through January 23, 1974. He notified them he wished to use up specified portions of the time he had coming during that period because of his plan to retire from the department. Under the schedule his last active working day was November 30, 1973. The remaining days of the period would be attributed to regular days off, accrued holidays, compensatory time off and vacation. The acting chief and commissioner approved the schedule.

On November 30, 1973, plaintiff notified the chairman of the police pension board of his intention to leave the department at midnight January 23, 1974. The pension board accepted that date as his termination date for purposes of computing his entitlement to pension benefits under § 411.-6(1)(c), The Code. The city council passed a resolution on December 5, 1973, concurring with the pension board determination and providing that plaintiff "be retired" as a member of the police department effective midnight January 23, 1974.

At some time after November 28, 1973, but before January 24, 1974, the city council increased police vacation and sick leave benefits for officers employed during 1973. As of January 1, 1974, a person in plaintiff's position would be entitled to five instead of four weeks of paid vacation and would be fully compensated for all accumulated sick leave in excess of 90 days. Previously an employee was paid for 25 percent of his accumulated sick leave in excess of 90 days. In claiming compensation from the city after January 23, 1974, for accrued benefits not consumed by taking time off under his November 30–January 24 work schedule, plaintiff included the value of these increased benefits. The City refused to pay them. In addition, the City refused to recognize plaintiff's entitlement to the amount of compensatory time off listed in the previously approved work schedule.

Then, in August 1974 the city council passed a resolution purporting to rescind its resolution of December 5, 1973, and fixing plaintiff's employment termination date as December 21, 1973.

The City paid plaintiff $4365.01 for his employment after November 29, 1973. This payment did not include the increase in sick leave and vacation benefits to which plaintiff contended he was entitled. It also did not include wages for all of the days plaintiff purported to take compensatory time off.

Two principal issues were litigated at trial. One was whether plaintiff was entitled to compensation for the increase in vacation and sick leave benefits which occurred prior

to January 24, 1974. The other was whether he was entitled to wages for a greater number of days attributable to compensatory time off. The trial court held he was not entitled to the increased vacation and sick leave benefits and allowed only part of his claim for wages. He appealed, but the City did not cross appeal from the $77.64 judgment.

■ I. *The vacation and sick leave claim.* The trial court held plaintiff's entitlement to vacation and sick leave benefits was limited to benefits allowable as of November 30, 1973, the date plaintiff notified the pension board of his intention to terminate his employment. The court relied on *City of Iowa City v. White*, 253 Iowa 41, 111 N.W.2d 266 (1961). We believe the court erred in holding the *White* case to be controlling here.

The issue in *White* was whether a disabled police officer was entitled to receive disability pension benefits established by legislation which was enacted after the injury causing his disability. This court construed the statute to authorize him to receive the statutory benefits. In so holding the court said the officer was intended to have pension rights under the law in effect either at the time his application for them was filed or when the application was acted upon by the pension board, and he was not limited to benefits existing under the law at the time of the injury.

We are not dealing with pension rights or statutory construction in the present case. Plaintiff's November 30, 1973, communication to the pension board was a notification of his intention to retire at a future date. The only action required of the pension board was its recognition of the date designated by plaintiff as his date of employment termination for purposes of computing pension benefits under the existing statute. No change in that statute occurred in the intervening period. Plaintiff's present claim is for employment compensation. If he was in fact employed when the right to this compensation accrued, he is entitled to it. See *Tevis v. City of San Francisco,* 43 Cal.2d 190, 272 P.2d

757 (1954). Even if the *White* principle were applicable, it would not divest his accrued right because his application for compensation was necessarily made after the city council action making the increased benefits available. The *White* case is wholly inapposite.

■ Nevertheless, the City contends that plaintiff's employment was terminated by its August 1974 resolution as of December 21, 1973, before the increased benefits were available. We find no merit in this contention. Because plaintiff was a civil service employee the City had no authority to terminate his employment except as permitted by the civil service law. Removal of civil service employees is limited by § 400.10, The Code. The City does not contend it acted under this or any other provision of the civil service law in purporting retroactively to change plaintiff's termination date, and it is obvious from the record it did not.

The City contends it acted under its authority to fix the term of plaintiff's employment. See § 372.13(4), The Code. However, this provision does not empower the City to terminate an employee involuntarily on the pretext of establishing the term of his employment. It is expressly made subject to other provisions of law. It does not authorize the City to deprive plaintiff of his civil service rights.

Plaintiff was in fact employed by the City through January 23, 1974, as recognized by the trial court. Upon termination, he was entitled to compensation for benefits which accrued during the period of his employment. Among those benefits were the January 1, 1974, increases in vacation and sick leave allowances.

The City computed plaintiff's daily wage at $55.944. On that basis, it owes him $279.72 for his five days additional accrued vacation and $3860.14 for his 92 days accumulated sick leave in excess of 90 days, taking into account the 25 percent payment previously made.

II. *The wage claim.* The trial court found plaintiff had earned 87 hours of com-

pensatory time off by reason of overtime worked prior to the time he became assistant chief of police in 1969. Based on an eight-hour work day, the court held he was entitled to wages for 10⅞ days because of this.

■ It was stipulated that plaintiff accumulated an additional 38 hours of compensatory time during 1973 while he was assistant chief. The court refused to award plaintiff wages for this item, apparently on the ground command personnel were compensated for overtime under an honor system and did not accumulate compensation time credits. Although the record contains evidence to support this finding for the period prior to 1973, plaintiff offered uncontroverted evidence that after January 1, 1973, command personnel were returned to a system where they accumulated compensatory time credits like other officers. The City agrees plaintiff had the 38 hours credit for 1973 but argues he could use this credit only by taking time off and cannot be paid for it. The problem with this argument is that plaintiff did purport to use the 38 hour credit by attributing 4¾ days of his November 30–January 24 work schedule to it. By refusing to pay him wages for those days, the City prevented him from doing what it now says he had a right to do.

Therefore the trial court erred in refusing to award plaintiff wages for those days. He is owed $265.74 for this item.

Based on the additional vacation, sick leave and compensatory time compensation to which plaintiff is entitled, the trial court's award must be increased by $4405.60 from $77.64 to $4483.24. We reverse and remand for entry of judgment accordingly.

REVERSED AND REMANDED.