Russell **BODECKER**, Walter Harrington, Jr., Lathan Horton, J. C. Green, Mills Saunders, Eron Scullark, Ernest Van Arsdale, Appellants, Herbert D. Wheeler, Mike Stigler and Gary Bender, Appellants,

v.

**LOCAL UNION NO. P–46**, Affiliated with United Food and Commercial Workers International Union, AFL–CIO, Lyle Taylor, President, Local Union No. P–46, Affiliated with United Food and Commercial Workers International Union, AFL–CIO and The Rath Packing Company, Appellees.

No. 80–1328.

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 11, 1980.

Decided Feb. 18, 1981.

Larry J. O'Connor, P. C., Waterloo, Iowa, for appellants.

Patrick M. Roby, Shuttleworth & Ingersoll, Cedar Rapids, Iowa, for appellee, Rath Packing Co.

Robert D. Fulton, Fulton, Frerichs, Nutting, Martin & Andres, P. C., Waterloo, Iowa, for appellees, Local Union No. P–46, Affiliated with United Food and Commercial Workers International Union, AFL–CIO.

Before BRIGHT and STEPHENSON, Circuit Judges, and LARSON,* Senior District Judge.

STEPHENSON, Circuit Judge.

Plaintiff-appellants brought suit seeking injunctive and declaratory relief, and damages under 29 U.S.C. § 185. The plaintiffs' principal claim is that the defendants acted in violation of the Iowa Wage Payment Collection Law, Iowa Code § 91A.5(1), by amending the collective bargaining agreement to establish stock acquisition and profit-sharing plans funded by payroll deferrals. The district court[1] found in favor of the defendants holding that the Iowa statute was not applicable and, even if it was, it was pre-empted by the federal statutory scheme covering labor relations. We affirm the district court.

## I. BACKGROUND

The findings of the district court are summarized below.

The plaintiffs are employees of The Rath Packing Company and members of Local 46. The union, which is affiliated with the AFL–CIO, is the bargaining agent for production workers at Rath. The company has its headquarters in Waterloo, Iowa.

Rath has experienced economic difficulties during recent years which have threatened its existence. In an effort to stabilize its financial picture, Rath entered into negotiations with the union, local and federal governmental units, to obtain long-term financing. Lyle Taylor, president of Local 46, proposed the establishment of a payroll deduction plan and a profit-sharing program to help resolve the company's finan-

---

* The Honorable Earl R. Larson, Senior Judge for the District of Minnesota, sitting by designation.

1. The Honorable Edward J. McManus, United States Chief Judge for the Northern District of Iowa, presiding.

cial problems. The union's proposal was in response to a plan recommended by a consulting firm which would have cost each employee $4.00 to $7.00 per hour in benefits. The plan suggested by Taylor amounted to only a $1.50 per hour cost.

On March 8, 1979, the union rank and file voted by a substantial margin to instruct the negotiating committee to pursue Taylor's proposal. After negotiation with the company, an interim agreement was concluded. This interim agreement amended the existing collective bargaining contract. It stated that certain benefit payments would not be owed to employees but would be paid into an escrow account. The payments were deductions from vacation and holiday pay, and sick benefits. In its final form the plan provided that the funds garnered from the payroll deduction plan would initially be used by Rath as operating capital and eventually to purchase authorized but unissued Rath stock.

The union membership approved the interim agreement on April 12, 1979. The union members approved this arrangement a second time when a local agreement was adopted on May 30, 1979. Local 46 voted in favor of the plan at each meeting by a margin of at least five to one.

The union's purchase of Rath stock was delayed until the Securities Exchange Commission approved the plan.[2] Following

SEC's sanction, the stock purchase program will have to be ratified by the shareholders of Rath and again by the members of the union. Once these conditions are satisfied, the union will acquire a controlling percentage of stock. If the arrangement is not approved, the local agreement provides that the deferral payments are to be returned to the employees and the deferral system cancelled.

Until the time that the union's purchase of Rath stock is approved or not approved, the funds in the escrow account are being used by Rath as operating capital. This fact was explained at the union meeting during which the local agreement was approved.

The district court found that each of the union meetings was held in accordance with the union's constitution and by-laws, that full disclosure was made and that union members had a full opportunity to discuss the proposals. The district court also found that four distinct plans totaling more than sixteen million dollars in loans and benefits to Rath are dependent upon the continuation of the deferral plan.[3]

The plaintiffs brought suit seeking preliminary and permanent injunctive relief, a declaratory judgment and damages, based upon an alleged violation of section 91A.5(1), Iowa Code (1979), and the union's

2. At the time of trial the SEC approval had not been obtained.

3. The district court found:
18. At the time of negotiating the interim agreement, local agreement and the escrow agreement Rath needed the following plans to be operative in order to remain in business and thereby protect the employment of members of the Local:
(a) A Department of Housing and Urban Development Grant to the City of Waterloo, Iowa, which in turn would be loaned by the City of Waterloo to Rath in the amount of $4,630,000. Department of Housing and Urban Development has indicated it will require the continued deferral of benefits and payment into escrow of those benefits as a condition of making the grant.
(b) The Black Hawk County Economic Development Committee has loaned $2,980,000 to Rath. This loan is presently being renewed on a monthly basis. In order to con-

tinue the loan and place it on a long-term basis the Economic Development Committee is requiring the continuation of the deferred benefit program.
(c) The stock wage program which would permit the sale of stock to the employees of the company for $3,615,000 thereby giving majority interest in the company to the employees is dependent upon the completion of the HUD loan, an extension of the Black Hawk County Economic Development Committee, Inc. loan.
(d) The Internal Revenue Service has given a partial waiver of minimum funding standards for the year ending December 31, 1978. This waiver in effect relieves Rath of the obligation to pay the amount of $5,849,000 in its pension plan. The Internal Revenue Service has indicated that the deferred benefit arrangement is one of the conditions attached to the partial waiver.

breach of its duty of fair representation. On January 9, 1980, after hearing, Judge McManus denied the preliminary injunction. After trial, the district court made findings of fact and held: (1) that the court was without jurisdiction to issue an injunction under the Norris-LaGuardia Act, 29 U.S.C. § 104(c), because the plaintiffs' claim involved a labor dispute; (2) the union and Taylor had not breached any duty of fair representation owed plaintiffs; and (3) compliance with section 91A.5(1) was not required because the wage or benefit deferrals were made pursuant to a valid collective bargaining agreement and that even if the Iowa statute applied it was pre-empted by federal law.

## II. DISCUSSION

■ The key issue in this case is the effect of the Iowa statute. Section 91A.5(1) provides:

1. An employer shall not withhold or divert any portion of an employee's wages unless:

a. The employer is required or permitted to do so by state or federal law or by order of a court of competent jurisdiction; or

b. The employer has written authorization from the employee to so deduct for any lawful purpose accruing to the benefit of the employee.

Iowa Code § 91A.5(1) (1979). The appellant-plaintiffs maintain that this section was violated when the union and the company agreed to the deferral of benefits to the escrow account without the individual written authorization of Rath employees. However, we find that the appellants have misinterpreted the statute. Section 91A.2(4) defines wages as "compensation *owed* by an employer" and "payments which are *due* an employee under an agreement with the employer." Iowa Code § 91A.2(4) (1979) (emphasis added). The district court specifically found in accord-

ance with the collective bargaining agreement as amended that the benefit payments were not "owed" to the employees during the terms of the interim agreement and that all the deferrals by Rath were made pursuant to the agreement. Thus, in our view the benefits deferred were not "wages" within the meaning of the statute because they were not yet due.[4]

■ The appellants also claim that the union breached its duty of fair representation by failing to fully disclose the terms of the agreement and by applying pressure to union members. The appellants assert that the union hierarchy unfairly pressured the employees by stating that if the deferral plan was not approved, Rath would be forced to cease operations. The district court made a finding that the union and its officers had not taken any actions against the plaintiffs that were arbitrary or in bad faith and each plaintiff was provided his full rights and equal opportunities pursuant to the by-laws and constitution of the local and the international. After examining the record, we hold that this finding is not clearly erroneous. The record supports the district court's finding that the continuation of Rath as a going business concern is contingent upon the deferral plan.

■ Finally, section 104(c) states that the district court shall not have jurisdiction to enjoin any activities arising out of a labor dispute which concerns the "withholding * * * [of] moneys or things of value." The appellants assert that section 104(c) does not prevent issuing an injunction in the case at bar because an intra-union dispute is not a "labor dispute." However, this position is in conflict with the statutory definitions of the relevant terms. 29 U.S.C. § 113(a), (c). *See United Steelworkers of America v. Bishop*, 598 F.2d 408, 414–15 (5th Cir. 1979); *Barnes & Tucker Company v. United Mine Workers of America*, 338 F.Supp. 924, 925–27 (W.D.Pa.1972).

---

**4.** Our conclusion that the Iowa statute is inapplicable makes a discussion of the pre-emption issue unnecessary.

We conclude that the findings of the district court are not clearly erroneous and that no error of law appears.[5]

Affirmed.

---

5. On the first day of trial, the plaintiffs filed a motion to voluntarily dismiss Rath. Rath resisted this motion seeking a decision on the merits. The district court did not expressly rule on this motion. Although the appellants state the district court erred by not ruling on this motion, this argument is not stressed in their brief on appeal.

We note that a voluntary dismissal is not a matter of right but within the discretion of the district court. Fed.R.Civ.Pro. 41(a)(2). *See Williams v. Ford Motor Credit Co.*, 627 F.2d 158, 159 (8th Cir. 1980). In light of the district court's holding on the ultimate issues, it is clear that the plaintiffs' motion to dismiss Rath was denied. We conclude that the district court did not abuse its discretion in this matter.