STEPHEN W. McCARTY, Plaintiff-Appellant, *v.* THE CITY OF ROCKFORD, Defendant-Appellee.

Second District    No. 80-663

Opinion filed May 22, 1981.

William M. Flaherty, of Rockford, for appellant.

Dennis L. Leahy, of Rockford, for appellee.

Mr. JUSTICE UNVERZAGT delivered the opinion of the court:

The plaintiff was formerly a city attorney employed by the city of Rockford. He was hired in August 1973, and at that time the city had in force an ordinance providing that city employees—exclusive of elected officials, probationary employees, seasonal employees and employees under collective bargaining—could earn sick leave with pay at the rate of "six (6) days (forty-eight (48) hours) for each six months of service" at the rate of 25% of regular pay.

In February of 1979, effective March 5, 1979, the city amended the ordinance to provide a rate of 75% of regular pay for accumulated sick leave upon death or retirement. Retirement for the purposes of the ordinance was defined as "voluntary termination of employment from the City of Rockford at age fifty-five (55) years or older, and after having been in the employ of the City of Rockford for a period of at least eight (8) years." The 1979 ordinance increasing the sick-leave pay to 75% of regular pay carried a "repealer" clause stating that "All ordinances or parts of ordinances in conflict herewith are hereby repealed."

Also, in 1975, the city entered into an agreement with the American Federation of State, County and Municipal Employees and by resolution extended the same benefits, including sick-leave pay at 75% of regular pay, to other city employees not members of AFSCME. An amendment to this resolution was adopted excluding "appointed" personnel.

The plaintiff resigned his employment as a city attorney in August 1979 to take employment elsewhere. After resigning his position the plaintiff applied for sick-leave benefits, payable in cash, which demand was denied by the city. The plaintiff then sued the city for 48 days of accumulated sick leave, which he claimed not to have used as such amounting, according to his calculations, to $3,328.62 based on 75% of his regular pay, plus attorney fees.

The trial court, after a bench trial, found that if the plaintiff was entitled to recover at all it would be under the 1973 ordinance providing for a rate of 25% of regular pay; however, it found that neither the 1973 nor the 1979 ordinance as to sick leave applied to the plaintiff, that he was a salaried employee whose salary was not diminished by absence due to illness, that during his employment by the city the plaintiff "held the appointed position of City Attorney for the City of Rockford," and that during his employment he was "subject to those personnel policies set by the City of Rockford Legal Department including a policy that salaried City Attorney [sic] cannot accumulate sick leave benefits."

The trial court, therefore, entered judgment in favor of the defendant, City of Rockford.

In this appeal, the plaintiff contends (a) that he was entitled by the 1973 ordinance in force when he was hired to receive pay for accumulated sick leave at the rate of 25% of his regular pay and that this was a vested right; (b) that the 1975 committee report adopted by the city council resolution raised the rate of pay for such sick leave to 75%; and (c) the undisputed testimony proved that it was the custom of the city to apply the rate of pay for sick-leave purposes which the individual was receiving at the time of his termination. Therefore, the plaintiff contends, he had a vested right to accumulated sick-pay cash benefits based on 75% of his regular pay at the time he resigned his position as city attorney.

It should be noted that in calculating his accumulated days of sick leave the plaintiff did not include any period in 1979. Presumably, the purpose of taking only the 48 days claimed for 1974 through 1978 (based on 60 days for five years with a deduction for sick-leave time actually used) and disregarding any time for the 7½ months worked in 1979, was to eliminate the 1979 ordinance as a factor in considering the plaintiff's claim. The plaintiff bases his claim to *entitlement* to sick-leave pay on the 1973 ordinance; however, he bases his claimed *rate* of pay on the 1975 resolution which resolved to accord the same benefits to other municipal employees as was being extended to union employees, except as to appointed personnel.

We perceive several difficulties with the plaintiff's claim for a cash payment based on accumulated sick leave under the facts of this case. In the first place, we see no reason to disregard the 1979 Rockford ordinance and its possible effect on the plaintiff's claim. That ordinance reads in pertinent part as follows:

"Sec. 2—138, Sick Leave:

(a) All full-time permanent employees of the City of Rockford, excluding elected officers, probationary employees, seasonal employees, and employees covered by collective bargaining agreements, shall earn sick leave with pay at the rate of six (6) days (forty-eight (48) hours) for each six (6) months of service.

*　*　*

(e) The department head shall not authorize paid sick leave unless the employee has accrued sick leave time to his credit at the time of retirement as defined in (g).

(f) Sick leave is intended to compensate sick or disabled employees, who are unable to work. The following types of absences will be considered abuses of sick leave privileges:

(i) Claiming sick leave for repeated absences on Fridays and/or Mondays.

(ii) Claiming sick leave to cover tardiness at the start of shift.

(iii) Claiming sick leave after long emergency service.

Such types of claims will be investigated for validity by the respective department head and sick leave may be disallowed.

(g) Effective March 5, 1979, an employee, upon death or retirement, is entitled to receive payment for 75% of his accumulated sick leave. For the purpose of this ordinance, retirement is defined as voluntary termination of employment from the City of Rockford at age fifty-five (55) years or older, and after having been in the employ of the City of Rockford for a period of at least eight (8) years.

(h) All departmental or other personnel policies in conflict with the provisions of this ordinance are hereby repealed.

All ordinances or parts of ordinances in conflict herewith are hereby repealed."

The plaintiff asserts his claim under the 1975 resolution adopted by the city council as being a matter of employment policy, but (a) this mere resolution is not of equal dignity with a regularly adopted city ordinance and cannot be said in its legal effect to supplant the 1973 ordinance, and (b) the 1975 council resolution in question contained in its amended form a restriction as to "appointed personnel." The trial court found that the plaintiff came within the category of "appointed personnel" and we see no reason to doubt the correctness of that finding. The amendment as to appointed personnel was certainly aimed at excluding certain employees not considered as deserving or needing such protection, and it is logical to suppose that a city attorney would fall within that classification. Moreover, section 2—133(g)(1) of the Rockford Code of Ordinances dealing with compensation lists "City Attorneys" in the category of "department heads and other appointed officials." We would, therefore, be inclined to agree with the trial court's finding that city attorneys are employees intended to be embraced within the phrase "appointed personnel."

But in addition, we believe the 1979 ordinance adopted by the city council was intended to and did repeal the 1973 ordinance insofar as it was in conflict therewith. Moreover, if the plaintiff is depending on the 1975 council resolution this, of course, was not an ordinance and did not have the dignity of an ordinance. A resolution, being of lesser dignity, cannot take the place of an ordinance. (*Bullis v. City of Chicago* (1908), 235 Ill. 472; *Liberty National Bank v. Metrick* (1951), 410 Ill. 429.) In *Village of Gulfport v. Buettner* (1969), 114 Ill. App. 2d 1, 9, the court said:

"A resolution is a form by which the legislative body expresses an opinion. Acts of legislation by a municipal corporation which are to have continuing force and effect must be embodied in an ordinance while mere ministerial acts may be in the form of resolution."

A resolution, therefore, only expresses a policy, and while this policy may be adhered to over a period of time by the city, it is not a solid basis for maintaining a lawsuit. *Bullis v. City of Chicago.*

Thus while it is conceded by the city that it implemented and followed the policy announced by the 1975 council resolution as to equating nonunion employees with union members as pertains to sick-leave benefits, we see no vested rights arising therefrom which could not be altered by a later ordinance. Moreover, while the plaintiff was employed at a time when sick-leave benefits were payable, the nature of such benefits is such that they are obviously not payable in any particular amount nor calculated by any particular formula or regulation before such pay is actually accumulated, but are subject to such rules as apply at the time the event happens which entitles the employee to such benefits. In other words, the plaintiff did not, any more than any other employee, become entitled to sick-leave benefits until his death or retirement as defined in the ordinance in force actually occurred. This was when he terminated his employment and applied for sick leave. The plaintiff could not have demanded accumulated sick-leave pay at any given moment during his employment—it was not due and payable until he died or retired under certain conditions. Thus, even if it is conceded that the plaintiff had a vested right, it was a right subject to the conditions applying at the time his demand for sick-leave pay became viable, that is, when he terminated his employment and made his claim.

The plaintiff's claim at that time was clearly subject to the conditions set out in the 1979 Rockford ordinance. His claim was inchoate until then—it was not a lump sum of cash which he was entitled to demand during his employment but an extra emolument to be paid to him upon his death or retirement as defined. The 1979 ordinance clearly was in conflict with the 1973 ordinance as to conditions governing sick-leave pay and expressly repealed the 1973 ordinance so far as it conflicted. In any event, since the right to collect such sick-leave cash only matures at the time a certain event occurs, it is properly subject to the conditions existing when that event occurs. The plaintiff resigned some six months after the 1979 ordinance was effective, and his sick-leave benefits accrued under that ordinance and were subject thereto.

The plaintiff contends the city is "estopped" to deny him sick-leave cash because it paid certain other employees such sick-leave cash under conditions or in amounts not consistent with the city's position as to his claim. The variance was substantially explained, however, by the city's legal director, as having been based so far as legal department employees were concerned, on those employees being employed on federally funded projects and the feeling that the city was obligated to follow certain written Federal guidelines pertaining to wage policies. One

regular city employee not subject to Federal pay policies was paid such sick-leave benefits at a rate of 75% of regular pay in 1976; however, the legal director expressed the opinion that this was a pure mistake. His testimony was that the policy in the legal department, of which he was head, was not to grant sick-leave pay upon termination, that his employees were so advised, and that of the several attorneys who worked in the legal department during the past several years, only one had ever requested or been granted cash sick-leave benefits upon resignation and that was an attorney whose work was mostly on federally funded projects. Under these conditions, we see no legal or equitable force to the plaintiff's argument based on estoppel.

Since nothing is found to be due or owing to the plaintiff as wages there is, of course, nothing due for attorney fees under section 1 of "An Act providing for attorney's fees when mechanic, artisan, miner, laborer or servant sues for wages" (Ill. Rev. Stat. 1979, ch. 13, par. 13) as cited by the plaintiff.

For the foregoing reasons, the judgment of the circuit court of Winnebago County is affirmed.

Affirmed.

SEIDENFELD, P. J., and LINDBERG, J., concur.