**Lowell WILLETS, Art Becker, and Melford Johnston, Plaintiffs–Appellants,**

v.

**CITY OF CRESTON, a Municipal Corporation, Defendant–Appellee.**

No. 88–242.

Court of Appeals of Iowa.

Sept. 28, 1988.

As Amended Dec. 8, 1988.

Richard O. McConville, of Scalise, Scism, Sandre & Uhl, Des Moines, and Edward T. Harvey, Jr., of Mullin, Mullin & Harvey, Creston, for plaintiffs-appellants.

Paul J. Boysen, Jr., of Camp & Harsh, P.C., Creston, and Kathleen A. Reimer, of Black, Reimer & Goldman, Des Moines, for defendant-appellee.

Considered by OXBERGER, C.J., and SACKETT and HABHAB, JJ.

SACKETT, Judge.

This case involves issues surrounding Plaintiffs–Appellants' Lowell Willets, Art Becker and Melford Johnston claim to compensation for accumulated sick leave. The dispute arose when Defendant City of Creston modified their sick leave policy. Plaintiffs, nonbargaining unit employees of the city, who continued to be employed by the city, filed a petition for declaratory judgment seeking a determination they were entitled to payment for accumulated sick leave and seeking money damages from the city. The city filed a motion for summary judgment which the trial court sustained. Plaintiffs appeal. We affirm.

We set forth the facts which are substantially undisputed. All three of the plaintiffs are "at will" employees of the City of Creston. Plaintiff–Appellant Lowell Willets was employed for more than twenty years prior to June 30, 1986. Plaintiff–Appellant Melford Johnston has been employed for more than twenty years prior to June 30, 1986. Plaintiff–Appellant Art Becker had been employed for more than thirteen years prior to June 30, 1986. Dur-

ing all relevant periods, they have been employed as department heads and/or supervisors of the city who were not covered by the terms of a collective bargaining agreement.

At some time prior to 1974, the city had a practice of permitting employees to accumulate up to sixty days of unused sick leave. Employees earned sick leave at the rate of one day per month and accrued sick leave in excess of the sixty-day cap was lost. Prior to 1974, employees who terminated their employment with the city were eligible for payment of unused sick leave accumulated up to this cap. There is no record of when or how this practice started. On July 2, 1974, during the employment of all three plaintiffs, the city by resolution changed this practice. While still permitting employees to accumulate up to sixty days of unused sick leave, the 1974 resolution specifically provided that "[n]o payment for unused sick leave credit shall be made upon separation from city employment."

On or about July 1, 1978, the city negotiated collective bargaining agreements for certain city employees who were part of two separate bargaining units. A section of these agreements provided an accumulation cap for bargaining unit employees' sick leave and set the cap at a maximum of forty days (960 hours divided by 24 hour shifts). Accumulated sick leave up to the cap could be used during the term of employment for occasions of illness. After five years of employment from the date of the 1978 contract provision, a bargaining unit employee who terminated his/her employment with accumulated sick leave during the term of the contract would be eligible for payment of up to thirty days of accumulated unused sick leave.

The collective bargaining agreements, a 1983 letter from the city attorney who negotiated the 1978 agreement, and the affidavits of the city's current financial officer, the independent auditor for the city since 1981, all indicate that in the application of the collective bargaining sick leave provisions, all sick leave accumulated by employees prior to 1978 was disregarded for pay-

out purposes and the period of required service to qualify for payment upon termination dated from the 1978 contract which added this sick leave feature. All accumulated sick leave which was accumulated prior to the 1978 collective bargaining provision was disregarded for payout purposes "so all members of the bargaining unit would start equally as far as accumulation of sick leave [for possible payout purposes]." The time for eligibility for payout upon termination under the minimum service requirements of the contract was five years dating from 1978. In the 1980 collective bargaining agreements, the sick leave accumulation cap was raised to 120 days (2880 hours divided 24 hour shifts), but the potential accumulated sick leave payout upon termination remained at thirty days after five years of work under the policy.

From 1974 until 1980, plaintiffs and other nonbargaining unit employees of the city were not eligible for any payment of any portion of the sick leave which was accumulated if the employee terminated his/her employment during that period. On March 4, 1980, by resolution, the city council resolved "all City employees be entitled to all fringe benefits currently made available to the Local Bargaining units of Fire and Police Department."

Plaintiffs' petition initially claimed that on March 4, 1980, the city council "... formalized an oral compensation agreement which was existing at that time with the Plaintiffs and other nonunion by duly passing Resolution No. 31, ...."

Plaintiff Willets' affidavit submitted in support of his resistance to the motion for summary judgment describes his conversation with Mayor Weaver, not as an oral contract, but as a "request" which "initiated the policy in making nonbargaining unit employees, as part of their compensation, receive the benefits such as accrued sick leave that bargaining unit employees had previously received." Willets provided no evidence he was permitted to accumulate sick leave under a payout policy prior to the resolution passed by the city on March 3, 1980.

From the 1980 resolution until a June 3, 1986 resolution which changed this payout feature of sick leave, employees could accumulate one and one-half days of sick leave per month (36 hours divided by 24–hour shifts) or eighteen sick days per year; up to a maximum cap of accumulated leave available for sickness of 120 days (2880 hours divided by 24 hours). In calculating the amount of accrued sick leave for each city employee, the city's financial officer reported that the city added unused sick leave amounts earned in the current year, and if the accumulation cap was reached, deducted previously accumulated sick leave by use of a first in, first out method.

When the payout upon termination practice was extended to nonbargaining unit city employees by the March resolution, which was effective July 1, 1980, all accrued sick leave which was accumulated prior to 1978 was disregarded for payout purposes, and the minimum service requirements for any payout upon termination dated from 1978, the date used for bargaining unit employees.

During the terms of the union contracts with this payout feature, i.e. 1978–1986, and the term of the city council resolutions with this payout feature for nonbargaining unit employees, i.e. 1980–1986, only employees who terminated their employment during these respective periods became eligible for and were paid a lump sum sick leave payout.

When the city decided to end the payout feature of any portion of accumulated sick leave, the city bought back from nonbargaining unit employees a portion of the sick leave they had accumulated during the effective period of the 1980 payout resolution. The amount of sick leave to be purchased by the city was set uniformly for all nonbargaining unit employees based upon the employee's length of service times $200 per full year of employment. The payment was not dependent on their meeting the five year employment requirement had they quit in June, 1986. The product of these two figures [years of service × $200], divided by the employee's hourly wage equivalent provided the maximum amount of accrued sick leave hours the city would be willing to currently buy back in a lump sum. The number of hours of sick leave for which full compensation was made was deducted from each employee's total accumulated sick leave. Any remaining accumulated sick leave for nonbargaining unit employees continued to be available for each employee's use during the remainder of their employment when they were ill or injured.

The plaintiffs have not been denied their use of the sick leave they accumulated prior to 1986 on occasions subsequent to 1986. Further, the plaintiffs from 1974 to the present, like all other city employees who have reached the accrued sick leave numerical cap, lose previously accumulated leave on an annual basis if they do not use enough to fall below the cap.

As of June 30, 1986, both plaintiffs Willets and Johnston had accumulated 2880 hours of accrued but unused sick leave and were at the sick leave cap, and from that point forward (absent extended illness) would lose previously accumulated sick leave at the rate of 432 hours per year (36 hours × 12 months), which leave would be replaced by new sick leave. Plaintiff Becker, with 960 hours accumulated sick leave prior to June 30, 1986, would take 4.44 years of continued employment to get to the sick leave cap.

Plaintiffs contend (1) the trial court erred in holding as a matter of law the accumulated sick pay did not vest until plaintiffs retired or terminated their employment, and the plaintiffs' entitlement to sick leave reimbursement was fixed by the city's new resolution changing the policy for accumulated benefits, (2) the trial court erred in holding the sick leave benefits were not wages under Iowa Code chapter 91A, and (3) a genuine issue of material fact was raised by plaintiffs' affidavit and exhibits.

## I.

■ The trial court determined there was not evidence of an expressed or implied contract between plaintiffs and defendant concerning sick leave; and the passage of a resolution implementing a policy

of paying out sick leave on retirement does not create a contract between the city and employees not yet retired. The court found the only evidence of employee input into the program was an affidavit by Plaintiff Willets indicating the policy of payment of accrued sick leave on termination was suggested by him. The court held because plaintiffs were employees at will their contracts were subject to modification as a condition of their employment.

The trial court did not err in holding as a matter of law the accumulated sick pay did not vest until plaintiffs retired or terminated their employment. The plaintiffs agree the provision for sick leave under which they claim monetary damages was only that they be reimbursed for unused sick leave on termination or retirement. Plaintiffs have neither terminated their employment nor retired. They continue to be employed by the city. They contend, however, the sick leave is a vested benefit and they should have it now. Plaintiffs cite no Iowa authority for their position. We find the authority to be to the contrary.

In *Prof. Staff Ass'n v. Public Emp. Rel. Bd.*, 373 N.W.2d 516, 518 (Iowa App.1985) we characterized "reimbursement of unused sick leave in a lump sum cash payment upon termination of employment" as a form of severance pay to be paid upon an employee leaving employment. We determined such a payment is triggered by termination of the employment relationship, and not by the rendering of primary or additional service. In *Jackson v. City of Ottumwa*, 396 N.W.2d 794, 795 (Iowa App. 1986) we affirmed the trial court's denial of a former employee's claim for unused sick leave where the city had applied a uniform practice of requiring an employee to be eligible for social security in order to be considered retired and the employee who had left the city's employ was not eligible for social security.

The nature of sick leave benefits is such that they are not payable in any particular amount nor calculated by any particular formula. They are a right subject to conditions applying at the time the demand for sick leave becomes viable either when the employee qualifies for the benefits because of sickness or qualifies for the benefit because he or she terminates his or her employment or retires. *See McCarty v. City of Rockford*, 96 Ill.App.3d 531, 535, 51 Ill. Dec. 941, 421 N.E.2d 576, 579 (Ill.App. 1981). *See also Haesemeyer v. Mosher*, 308 N.W.2d 35, 38 (Iowa 1981) (where legislation and agency rules in effect at time of employees termination were used to determine their entitlement to accrued vacation benefits).

We note too the factors necessary for fairly and accurately determining the amount of plaintiffs' claimed benefits are simply not available at this time. Since 1974 the city has had a cap on the amount of accrued sick leave that can be carried forward. When the employee reaches the accumulation cap the first accrued sick leave is lost and replaced with recently accrued leave. Consequently the sick leave for which plaintiffs claim compensation depending on the length of time plaintiffs continue employment could be replaced in whole or in part by sick leave earned during the period when the city had no payout policy. The accrued leave may be used for sickness prior to termination and the rate of pay plaintiffs will then be receiving is not now ascertainable.

■ None of the plaintiffs have terminated their employment with the city. Compensation for sick leave accrued during the course of employment is therefore not payable until termination and the policy in effect at that time is determinative. *See Vanous v. City of Cedar Rapids*, 255 N.W. 2d 334, 336 (Iowa 1977). An employment contract terminable at will is subject to modification at any time by either party as a condition of its continuance. *Moody v. Bogue*, 310 N.W.2d 655, 660–61 (Iowa App. 1981). The employees' only alternative is to accept the new conditions or quit; an employee's decision to continue to work, knowing the newly proposed terms, results in the employee's acceptance as a matter of law. *Id.* We find no error here.

## II.

■ Plaintiffs next claim the trial court erred in holding their accrued sick leave

benefits were not wages under Iowa Code section 91A.2(4)(b) (1987), which provides in relevant part

... "Wages" means compensation owed by an employer for:

b. ... sick leave, and severance payment *due* an employee under an agreement with the employer or under a policy of the employer. (emphasis supplied).

No event has transpired to trigger sick leave being due. There is no evidence of sickness, termination or retirement. The trial court was correct in determining there was no support for plaintiffs' claim their accrued sick leave was wages under section 91A.2(4)(b). *See also Bodecker v. Local Union No. P-46*, 640 F.2d 182, 185 (8th Cir.1981) (where the court determined an employee's rights to stock and pension plans were not wages under Iowa Code section 91A.5(1) (1979) because the deferred benefits were not owed or due).

### III.

Plaintiffs' last contention is summary judgment was not proper. In *Gruener v. City of Cedar Falls*, 189 N.W.2d 577, 580 (Iowa 1971) the court said:

By proper motion, a party can compel his adversary to come forth with specific facts which constitute competent evidence showing a prima facie claim or defense. Paper cases and defenses can thus be weeded out to make way for litigation which does have something to it.

The language of our rule on summary judgments is very strong. Rule 237(e), Rules of Civil Procedure. Affidavits cannot merely be based on what someone has reported to affiant: 'Supporting and opposing affidavits shall be made on personal knowledge.' Conclusions and beliefs are insufficient: 'shall set forth such facts as would be admissible in evidence.' The person making the statements must know whereof he speaks: 'shall show affirmatively that the affiant is competent to testify to the matters stated therein.' When the motion itself is substantiated, the opposing party cannot simply rely upon his pleadings, for the pleadings are the very instruments that the procedure is designed to pierce: 'an adverse party may not rest upon the mere allegations or denials of his pleading.' Neither can the opposing party assert only generalities in resistance: 'his response, by affidavits or as otherwise provided in this rule, must set *forth specific* facts showing that there is a genuine issue for trial.'

▆▆ Plaintiffs must do more than merely deny the sworn statements made in support of the defendant's motion for summary judgment.

Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.... When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or otherwise as provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not respond, summary judgment, if appropriate shall be entered against him.

*Woodruff v. Associated Grocers of Iowa, Inc.*, 364 N.W.2d 215, 217 (Iowa 1985).

A resistance to a motion for summary judgment must contain sufficient specific facts constituting admissible evidence as to put into issue elements of fact which are material to the court's determination. *Gruener*, 189 N.W.2d at 581.

▆▆ Plaintiff Willets has alleged that he believes that it was his request which caused the city to extend the benefits of the collective bargaining agreement to nonbargaining unit employees. This assertion does not shed any light on nonbargaining unit employees' reasonable expectations as to the continuation of the city's 1980 resolution into the future. The fact that plaintiffs state that they might have used their sick leave had the 1980 resolution not been in effect, is not relevant to the material issues of their claim of an express or implied contract with the city. None of them

reported that they had taken unpaid leave during times when they were legitimately ill, or that the city was aware or should have been aware that these employees were doing that.

Plaintiffs Becker and Johnston assert that they "took for value" the policy of the existing resolution and did so in lieu of other benefit and salary increases. This assertion is made without any statement of supporting facts that they were offered and/or rejected any benefit or salary increases, telling city officials that the sick leave payout policy in place was enough, or that the city at any time between 1980 and 1986 made any move to eliminate this payout resolution and plaintiffs responded by saying they would forego other benefits and/or salary increases. The record is barren of such supporting facts.

The district court was correct when it granted defendant's motion for summary judgment.

AFFIRMED.