NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL
FIRST CIRCUIT

NUMBER 2020 CA 1292

ALVIN FAIRBURN & ASSOCIATES, LLC
VERSUS
MARSHALL HENRY HARRIS AND CINDY WALE

consolidated with

NUMBER 2020 CA 1293

MARY KISTLER
VERSUS
MARSHALL HENRY HARRIS AND CINDY WALE

Decision Rendered: **OCT 0 4 2021**

* * * * * * *

ON APPEAL FROM THE
21st JUDICIAL DISTRICT COURT, DIVISION E
LIVINGSTON PARISH, LOUISIANA
DOCKET NUMBERS 140,553 c/w 140,754

HONORABLE BRENDA BEDSOLE RICKS, JUDGE

* * * * * * *

| | |
|---|---|
| Karl J. Koch<br>Baton Rouge, Louisiana | Attorney for Plaintiff/Appellant<br>Mary Kistler |
| Charles A. Schutte, Jr.<br>Baton Rouge, Louisiana | Attorney for Defendant/Appellee<br>Cindy Wale Franz |

**BEFORE: McDONALD, LANIER, and WOLFE, JJ.**

**McDONALD, J.**

A former parish council clerk appeals a summary judgment dismissing her defamation suit against a parish council member. After review, we deny a pending motion to strike and affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

At its September 22, 2011 meeting, the Livingston Parish Council (Council) approved hiring Alvin Fairburn & Associates, LLC (AFA) to perform road engineering services in conjunction with possible improvements to Duff Road in Livingston Parish, Louisiana. Council members Cindy Wale and Marshall Henry Harris voted in favor of hiring AFA. It is the exact scope and cost of what the Council actually hired AFA to do that precipitated this litigation.

On March 6, 2013, Baton Rouge television station WBRZ aired an investigative report regarding action taken by Mary Kistler, Council Clerk, after the September 22, 2011 Council meeting. The WBRZ report questioned whether Ms. Kistler's communication with AFA employees during her drafting of the September 22, 2011 Council meeting minutes changed the meaning of those minutes and the scope and cost of the AFA services ultimately approved by the Council. As part of her investigation before the report aired, WBRZ reporter Kristy Davis interviewed Council members Wale and Harris and then included statements made by them in the WBRZ report.

Although the relevant summary judgment evidence does not include the actual interviews of Council members Wale and Harris, it does contain the WBRZ report that ultimately aired on March 6, 2013. To provide context herein, we set forth the following pertinent parts of a transcription of the WBRZ report:

> **[BY WBRZ REPORTER DAVIS]:** In an attempt to get the ball rolling on expanding Duff Road, in September of 2011, the [Council] approved the evaluation phase of the Duff Road Improvement Projects, but News 2 uncovered a separate set of documents. A month later[,] the [Council] approved its September minutes; however, the wording changed and was signed by then Council Clerk, Mary Kistler. The project now included not only an evaluation of Duff Road but, also, approval for the preliminary design and detailed route survey. Six words that cost taxpayers.

2

**[BY COUNCIL MEMBER HARRIS]:** That is a problem. We spent money that was not authorized to do that.

**[BY WBRZ REPORTER DAVIS]:** Just how much? Documents and checks show Livingston Parish taxpayers pay more than [$31,000.00.]

**[BY COUNCIL MEMBER WALE]: That is very scary to think that something like that could change that would cost [our], you know, dollars to the taxpayers.**

**[BY WBRZ REPORTER DAVIS]:** According to e-mails obtained by News 2, former Council Clerk, Mary Kistler[,] made the change. The e-mails show Kistler communicating with employees of [AFA], the company awarded the road work, telling them, "I can modify this resolution within the context of the discussion if necessary." ... Two weeks later[,] this Mary Kistler e-mail[ed] [AFA] employee Eddy Aydell, with a copy of the changed resolution. Changes that would later cost Parish taxpayers tens of thousands of dollars. Three of the Council members serving at the time tell News 2 ... Kistler never notified the Council about the changes. They, also ... tell us the Council did not read the minutes thoroughly when it accepted them, which, also, meant accepting the changes.

**[BY COUNCIL MEMBER WALE]: We expect them to be accurate, of course, you know, we may — we, we will look over them, but we don't look at every little detail to make sure it is correct. We assume that, you know, they've taken correct notes.**
(Emphasis added.)

After the WBRZ report aired, AFA and Ms. Kistler filed separate suits against Ms. Wale and Mr. Harris alleging that the two Council members' statements included in the WBRZ report were defamatory. Specifically, Ms. Kistler alleged that the Council members "accused [her] of falsifying Council records and thereby causing the Parish to spend $31,000 ... which the Parish Council had never authorized." The trial court consolidated the suits. In due course, the trial court dismissed AFA's suit after the parties settled it; denied Ms. Wale and Mr. Harris's joint motion for summary judgment in the Kistler suit; and, denied their joint motion to reconsider the motion for summary judgment, based on new evidence, in the Kistler suit (collectively, the joint motions).

In October 2018, Ms. Wale filed a motion for summary judgment solely on her own behalf, along with 16 exhibits, some that had been filed with the previous joint motions and some that were newly-filed. In March 2019, Mr. Harris filed his own motion for summary judgment. Ms. Kistler filed a consolidated opposition memorandum to the motions and "incorporated" by reference the oppositions and

3

exhibits she had filed in opposition to Ms. Wale and Mr. Harris's previously-filed joint motions. After a hearing in May 2019, the trial court signed a judgment on July 29, 2019, granting Mr. Harris's motion for summary judgment and dismissing Ms. Kistler's petition against him with prejudice. The trial court signed a separate judgment on August 15, 2019, granting Ms. Wale's motion for summary judgment and dismissing Ms. Kistler's petition against her with prejudice. In written reasons for granting the summary judgments, the trial court stated, "[T]here is no evidence of actual malice by either [Mr.] Harris or [Ms.] Wale."

Ms. Kistler appealed both judgments. In this decision, we decide Ms. Kistler's appeal from the August 15, 2019 judgment in favor of Ms. Wale. Another appellate panel is deciding Ms. Kistler's appeal of the July 29, 2019 judgment in favor of Mr. Harris in *Alvin Fairburn & Associates, LLC v. Marshall Henry Harris and Cindy Wale c/w Mary Kistler v. Marshall Henry Harris and Cindy Wale,* 20-1290, 20-1291 (La. App. 1 Cir. _/__/21), ____ WL ____.

## MOTION TO STRIKE REPLY BRIEF

Before reaching the merits, we address Ms. Wale's motion to strike Ms. Kistler's reply brief, in which Ms. Wale contends Ms. Kistler's reply brief should be stricken, because she failed to timely file her original brief, in violation of Uniform Rules – Courts of Appeal, Rule 2-12.6 ("The appellant may file a reply brief, if he has timely filed an original brief, but it shall be strictly confined to rebuttal of points urged in appellee's brief. ...") However, after Ms. Kistler failed to timely file her original brief, this Court notified her that she would have to file a motion for leave to file her reply brief. Because Ms. Kistler did not file such a motion, her reply brief was not filed. Thus, we deny, as moot, Ms. Wale's motion to strike Ms. Kistler's reply brief.

## ASSIGNMENTS OF ERROR

In two assignments of error, Ms. Kistler contends the trial court erred in dismissing her defamation suit against Ms. Wale by summary judgment. First, she contends that, after denying the joint motions, the trial court could not "change its mind" and grant Ms. Wale's solo motion for summary judgment, because Ms. Wale did

4

not file any significant, additional summary judgment evidence on the issue of malice or other fault than what had been previously filed. Second, Ms. Kistler contends the trial court erred in finding she failed to meet her burden of producing sufficient factual evidence to create a genuine issue of material fact as to Ms. Wale's malice or other fault.

## RE-URGED MOTION FOR SUMMARY JUDGMENT

Regarding the first assignment of error, we note that the denial of a motion for summary judgment is an interlocutory judgment that is appealable under when expressly provided by law. *See* La. C.C.P. arts. 968, 1841, and 2083C. It is, therefore, subject to revision at any time prior to final judgment on the matter. *See VaSalle v. Wal-Mart Stores, Inc.,* 01-0462 (La. 11/28/01), 801 So.2d 331, 334. Thus, a trial court may consider a re-urged motion for summary judgment after prior motions for summary judgment on the same issue have been denied. *Trigg v. Pennington Oil Co., Inc.,* 01-2822 (La. App. 1. Cir. 11/8/02), 835 So.2d 845, 846-47. And, such consideration is allowed when the mover files new evidence on the summary judgment issue, as well as when the mover does not file new evidence on the issue. *See Talbert v. Restoration Hardware, Inc.,* 17-0986 (La. App. 1 Cir. 5/13/18), 251 So.3d 532, 535-36 (new evidence filed with re-urged motion); *Saizan v. Pointe Coupee Par. Sch. Bd.,* 10-0757 (La. App. 1 Cir. 10/29/10), 49 So.3d 559, 562 ("essentially" the same evidence filed in support of and in opposition to re-urged motion); *Zachary Financial, Inc. v. Darjean,* 08-1655 (La. App. 1 Cir. 2/13/09), 2009 WL 382731, *3 (no new evidence filed with re-urged motion).[1]

Here, with her solo motion, Ms. Wale filed some of the same evidence filed with the joint motions and some new evidence not previously filed. Ms. Kistler contends the newly-filed evidence does not pertain to the issue of Ms. Wale's malice. Because the trial court's earlier denial of the joint motions were interlocutory judgments, those judgments were subject to revision at any time, regardless of whether Ms. Wale filed

---

[1] *Contrast Alexander v. Par. of St. John the Baptist,* 12-173 (La. App. 5 Cir. 10/16/12), 102 So.3d 904, 908 (finding a trial court may grant a re-urged motion for summary judgment only if the movant has supplemented the record with meaningful additions that clearly establish there is no longer an issue of material fact to be determined).

additional evidence regarding malice with her re-urged motion for summary judgment. *See Zachary Financial, Inc.,* 2009 WL 382731 at *3. Accordingly, the trial court did not err in considering, and then granting, Ms. Wale's solo motion for summary judgment after having previously denied the joint motions. Ms. Kistler's first assignment of error is meritless.

## DISCUSSION

Appellate courts review the grant or denial of summary judgment *de novo* under the same criteria governing the trial court's consideration of whether summary judgment is appropriate. *Jefferson v. Nichols State Univ.,* 19-1137 (La. App. 1 Cir. 5/11/20), 311 So.3d 1083, 1085, *writ denied,* 20-00779 (La. 11/4/20), 303 So.3d 623. A court shall grant summary judgment if the pleadings, memorandum, and admissible supporting documents show there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. *See* La. C.C.P. art. 966A(3) and (4); *Jefferson,* 311 So.3d at 1085. The summary judgment movant maintains the burden of proof. La. C.C.P. art. 966D(1). Nevertheless, if the movant will not bear the burden of proof at trial on the issue before the court on the motion, his burden is satisfied by pointing out an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, the adverse party must produce factual support sufficient to establish he will be able to satisfy his evidentiary burden of proof at trial. If the adverse party fails to meet this burden, there is no genuine issue of material fact, and, if appropriate, the court shall render summary judgment against him. La. C.C.P. arts. 966D(1) and 967B.

Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. *Jefferson,* 311 So.3d at 1085. Courts have traditionally found defamation actions particularly appropriate for resolution by summary judgment, due to their chilling effect on the exercise of free speech. *Johnson v. Purpera,* 20-01175 (La. 5/13/21), 320 So.3d 374, 387.

Defamation is a tort involving the invasion of a person's interest in his or her

6

reputation and good name. *Id.; Fitzgerald v. Tucker,* 98-2313 (La. 6/29/99), 737 So.2d 706, 715. A statement containing an element of personal disgrace, dishonesty, or disrepute undoubtedly satisfies the definition of defamatory. *Fitzgerald,* 737 So.2d at 716. To prevail in a defamation action, the plaintiff must prove: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault on the part of the publisher, generally referenced as malice, actual or implied; and (4) resulting injury. *Johnson,* 2021 WL 1921081 at *7. If even one of the required elements of the tort is lacking, the claim fails. *Id.*

The threshold question in any defamation action is whether the challenged words are capable of a defamatory meaning. *Id.* at *10. The court has the unique role of answering this question – whether a particular statement is objectively capable of having a defamatory meaning, considering the statement as a whole, the context in which it was made, and the effect it is reasonably intended to produce in the mind of the average listener. *Id.* at *8, *10. And, notably, not all defamatory statements are actionable, even though defamatory. *Id.* at *13. A statement of opinion relating to matters of public concern, *i.e.,* relating to any matter of political, social, or other concern in the community, will receive full constitutional protection unless it contains a provably false connotation. *See Johnson,* 2021 WL 1921081 at *9, *13; *Wainwright v. Tyler,* 52,083 (La. App. 2 Cir. 6/27/18), 253 So.3d 203, 214-15. A statement of opinion is actionable only if implies the existence of underlying facts; a reasonable person could ascertain those implied facts with some degree of certainty; the implied facts are false, defamatory, made with actual malice; and, concern another. *See Fitzgerald,* 737 So.2d at 716-17. A finding of actual malice requires proof that the defendant either knew his statement was false or acted with reckless disregard for the truth. *Regan v. Caldwell,* 16-0659 (La. App. 1 Cir. 4/7/17), 218 So.3d 121, 127. It is the court's duty to decide whether a statement qualifies as a constitutionally-protected statement of opinion. *See Fitzgerald,* 737 So.2d at 716.

In support of her motion for summary judgment, Ms. Wale contends Ms. Kistler will not be able to establish that Ms. Wale's statements were false, defamatory, or

7

made with actual malice toward Ms. Kistler. In opposition, Ms. Kistler contends Ms. Wale admitted in an affidavit that her statements in the WBRZ report were about Ms. Kistler and the September 22, 2011 Council meeting minutes; and, according to Ms. Kistler, Ms. Wale knew her statements were false.[2]

In support of her motion for summary judgment, Ms. Wale filed evidence showing the context within she made the statements that later appeared in the WBRZ report, including her own deposition, as well as the depositions of Reporter Davis and of Corey Delahoussaye. In her deposition, Ms. Wale testified that she was on her way from one meeting to another at the Council office when Reporter Davis unexpectedly approached her and began "firing questions" at her about the Duff Road project and the possible change in the September 22, 2011 Council meeting minutes; but, at that time, Ms. Wale had no idea what type of news story Ms. Davis would produce. Ms. Wale also did not remember Reporter Davis mentioning Ms. Kistler's name during the interview, and did not know anything about the interview specifically pertained to Ms. Kistler. Ms. Wale acknowledged that, after the WBRZ report aired, she signed an affidavit attesting that her statements to Reporter Davis related to Ms. Kistler; but, she explained that, at the time she made the statements, she had "no idea that [they] related to Ms. Kistler."

In her deposition, Reporter Davis testified that Corey Delahoussaye, a private citizen, and her own Freedom of Information Act request, were the sources of the information she used for the WBRZ report. She did not talk to Ms. Wale or to Mr. Harris before she appeared at the Council office to interview them in 2013; she did not obtain any documents from them as part of her investigation; neither Council member knew she was coming to the Council office nor how she would use their statements; she edited and chose which parts of their statements to use in the WBRZ report; and, neither Council member reviewed the WBRZ report, or had an opportunity to comment

---

[2] In their briefs, the parties disagree as to whether the trial court found Ms. Wale's statements were defamatory *per se,* or subject to a qualified privilege, which is a recognized defense in a defamation suit. *See, generally, Johnson,* 320 So.3d at 390 (discussing defamatory *per se*) and *Trentecosta v. Beck,* 96-2388 (La. 10/21/97), 703 So.2d 552, 563-64 (discussing qualified privilege). Given our analysis herein, we need not address whether Ms. Wale's statements were defamatory *per se* or subject to a qualified privilege.

on how their statements were used, before the report aired. According to Reporter Davis, she chose to use Ms. Wale's statements in her WBRZ report to point out that the wording the Council originally agreed upon at the September 22, 2011 Council meeting was changed without the Council's knowledge and that such was not proper protocol. Referencing Ms. Wale's statement, "That is very scary to think that something like that could change that would cost [our], you know, dollars to the taxpayers[,]" Reporter Davis interpreted the statement as Ms. Wale's "opinion as a council person elected by the people of Livingston Parish of what not following that protocol could mean." Reporter Davis admitted that Ms. Wale did not reference Ms. Kistler during her interview and that the only mention of Ms. Kistler in the WBRZ report were the words that she, Reporter Davis herself, wrote and broadcast.

In his deposition, Mr. Delahoussaye testified that, after his company's contract with Livingston Parish was terminated in 2011, he began his own investigation into events occurring in Livingston Parish. As part of his investigation, Mr. Delahoussaye obtained certain records kept by Ms. Kistler as the Council Clerk, including the documents pertaining to the revised September 22, 2011 Council meeting minutes. He contacted Reporter Davis and gave her the documents. According to Mr. Delahoussaye, neither Ms. Wale nor Mr. Harris knew about or were involved in his investigation or knew that he had obtained documents kept by Ms. Kistler. He also stated that, as far as he knew, neither Council person knew about or were involved in the developing WBRZ report.

In opposition, Ms. Kistler argues that Ms. Wale's statements were made with actual malice, because they "falsely accused Ms. Kistler of causing [Livingston] Parish to spend more money than the Council had authorized, and of changing the meaning of a resolution approved by the Council." She further argues that Ms. Wale's July 31, 2014 affidavit establishes the falsity of her statements, because therein she admitted that her statements related to Ms. Kistler's activities as Council Clerk and to her revision of the September 22, 2011 Council meeting minutes.

We first note that Ms. Kistler cannot rely on Ms. Wale's July 31, 2014 affidavit,

9

because it was not filed in support of or in opposition to Ms. Wale's solo motion for summary judgment. In her opposition to Ms. Wale's solo motion, Ms. Kistler attempted to "incorporate" the oppositions and exhibits she had filed to Ms. Wale and Mr. Harris's previously-filed joint motions and stated that such included Ms. Wale's July 31, 2014 affidavit.[3] However, under current La. C.C.P. art. 966D(2), we may consider only those documents specifically filed in support of or in opposition to Ms. Wale's solo motion for summary judgment, even if those documents appear elsewhere in the record. La. C.C.P. art. 966D(2) & Comments - 2015, comment (k); *Huggins v. Amtrust Insurance Company of Kansas, Inc.,* 20-0516 (La. App. 1 Cir. 12/30/20), 319 So.3d. 362, 365 (recognizing the duplicative nature of requiring a summary judgment movant to file his own copies of evidence in the record when the very same evidence already appears in the record, albeit attached to his opponent's cross motion for summary judgment.) And, nevertheless, Ms. Wale explained in her deposition that she executed the July 31, 2014 affidavit, attesting that her statements to Reporter Davis related to Ms. Kistler, *after* the WBRZ report aired; she explained that, *at the time she made the statements,* she had "no idea that [they] related to Ms. Kistler." Thus, this evidence, even if it could be considered, would not create a genuine issue of material fact as to whether Ms. Wale falsely accused Ms. Kistler of any wrongdoing such as to constitute actual malice toward her.

After a *de novo* review of the properly-filed summary judgment evidence, we conclude that Ms. Wale's statements are not actionable as a matter of law, but rather are statements of opinion relating to matters of public concern and were not made with actual malice. Objectively considering Ms. Wale's statements in the context they were made, the evidence shows that, when Reporter Davis interviewed her, Ms. Wale, as a Council member, was opining that it was "very scary" that "something like" an unauthorized change to the Council's meeting minutes "could change" the cost of dollars to the taxpayers. Clearly, a parish council's acts in approving the expenditure of

---

[3] Although Ms. Wale and Mr. Harris filed Ms. Wale's affidavit in support of their joint motion for summary judgment, we do not see that Ms. Kistler also filed the affidavit in opposition to either the joint motions or in opposition to Ms. Wale's solo motion for summary judgment.

10

taxpayer money, the protocol for preparing the official minutes of the council's meeting, and how that might affect the expenditure of taxpayer money are matters of political concern in the community. *See Johnson*, 2021 WL 1921081, at *9 (finding that legislative audits of a public agency's administration and operations addressed matters of public concern); *Fitzgerald*, 737 So.2d at 720 (finding a state board's mismanagement, which resulted in the issuance of unnumbered executed substance abuse counselor certificates, were matters of public concern).

Further, it is also clear that a reasonable person hearing Ms. Wale's statement of opinion to Reporter Davis, in the context it was made, would not have interpreted that opinion as a false implication of wrongdoing by Ms. Kistler. *See Fitzgerald*, 737 So.2d at 716. Ms. Wale did not know Reporter Davis would interview her, did not know what type of news story Reporter Davis would produce after the interview, and both Ms. Wale and Reporter Davis testified that Ms. Kistler was not mentioned during the interview. In fact, Reporter Davis admitted that the only mention of Ms. Kistler in the WBRZ report were words that *she herself* wrote and broadcast. And, notably, even Reporter Davis interpreted Ms. Wale's statements to her as an elected official's "opinion" of what not following proper protocol could mean. *Accord Fitzgerald*, 737 So.2d at 719 (noting that defendant's opinion during a television interview included no mention of the defamation plaintiff by name, nor did it state that anyone, let alone the defamation plaintiff, was in fact practicing as a substance abuse counselor without a valid certificate).

As earlier stated, the ultimate question before us is whether Ms. Wale's statement was "objectively capable of having a defamatory meaning, considering the statement as a whole, the context in which it was made, and the effect it is reasonably intended to produce in the mind of the average listener." *Johnson*, 2021 WL 1921081 at *10. The WBRZ report, objectively viewed, reasonably intended to produce a negative impression of Ms. Kistler in the mind of the average television viewer. That is, a reasonable viewer would interpret Reporter Davis's words in the WBRZ report as containing elements of personal disgrace, dishonesty, or disrepute against Ms. Kistler.

11

*Fitzgerald,* 737 So.2d at 716. Further, Reporter Davis's placement of Ms. Wale's statements in the WBRZ report may or may not have been intended to create the impression that Ms. Wale agreed with Reporter Davis's negative words. *Accord Fitzgerald,* 737 So.2d at 718, n.9 (noting that the defendant had no control over the editing process whereby his 20-minute interview was substantially edited down to a 2-minute newscast).

However, Ms. Wale's statements to Reporter Davis, objectively viewed in the context in which they were made *during the interview,* did not contain elements of personal disgrace, dishonestly, or disrepute as to Ms. Kistler, and, as such, were not reasonably intended to produce a negative impression of Ms. Kistler in the average listener's mind. Rather, the summary judgment evidence shows that Ms. Wale was unaware of Mr. Delahoussaye's investigation or Reporter Davis's investigation before the interview. Reporter Davis interviewed Ms. Wale without prior notice of the interview itself or of its subject matter. Ms. Wale provided no documents to Reporter Davis and was not involved in the production of the WBRZ report. She had no control over how Reporter Davis used her statements in the WBRZ report and was unaware that the WBRZ report would cast any of Ms. Kistler's actions in a negative light. Simply, Ms. Kistler has failed to produce factual support sufficient to establish that she will be able to prove at trial that Ms. Wale's opinion regarding a matter of public concern was made with actual malice against her. Because she has failed to meet this burden, we conclude the trial court appropriately dismissed Ms. Kistler's defamation claims against Ms. Wale. *See* La. C.C.P. art. 966D(1) and 967.

## CONCLUSION

For the above reasons, we affirm the trial court's August 15, 2019 judgment, dismissing Mary Kistler's petition against Cindy Wale with prejudice. We deny, as moot, Cindy Wale's motion to strike Mary Kistler's reply brief. We assess appeal costs to Mary Kistler.

**JUDGMENT AFFIRMED; MOTION TO STRIKE REPLY BRIEF DENIED AS MOOT.**